### KIRKPATRICK et al. v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. June 9, 1924.)

No. 4198.

1. **Criminal law 656(2)—Trial held not unfair, because of attitude of court in interrogating witness.**

Trial was not unfair, because of attitude of court in asking witness, "You mean sacks?" after witness testified that he and defendant unloaded cases of whisky.

2. **Conspiracy 48—Criminal law 1172(1)—Instruction as to theory of prosecution in conspiracy case held warranted by evidence.**

Statement, in instruction in conspiracy case, as to theory of prosecution that defendant was member of a "hijacking" gang seizing liquor from bootleggers, *held* warranted by the evidence, and further statement as to theory concerning the bootleggers and their plans not prejudicial.

3. **Conspiracy 47—Evidence held to sustain conviction for conspiracy to sell liquors for beverage purposes.**

Evidence *held* to sustain conviction for conspiracy to sell intoxicating liquors for beverage purposes.

**4. Conspiracy ⬤⇒47—Conspiracy to sell intoxicating liquor may be shown, without proof of actual sale.**

Conspiracy to unlawfully sell intoxicating liquors may be shown, without proof of actual sale, by proof of a combination or concerted plan to seize liquor with intent to sell.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

William Kirkpatrick and another were convicted of conspiracy to violate the prohibition laws, and bring error. Affirmed.

Kirkpatrick, with several others, Severns, Thompson, and White, were indicted for conspiracy to violate the prohibition laws. Severns was not apprehended, and upon the trial White was discharged. There were two counts in the indictment. Kirkpatrick and Thompson were convicted under the first count; Kirkpatrick was convicted under the second count, but Thompson was acquitted under the second count. Judgment was entered against the defendants, and writ of error was sued out.

The first count alleged a conspiracy unlawfully to have and possess for sale for beverage purposes, within the county of Bonner, Idaho, certain described intoxicating liquors fit for use as a beverage. The first overt act charged under count 1 is that Severns and Kirkpatrick, about April 1, 1923, at Sandpoint, Idaho, searched and caused to be searched a certain freight car upon a described train, which arrived at Sandpoint on the morning of the 1st of April, and that the defendants seized and caused to be seized from the freight car about 118 cases of liquor, and removed and caused to be removed the same from the freight car. A second overt act charged is that, about April 3, 1923, Kirkpatrick and Severns delegated one Decker to remove from a certain pool hall in Sandpoint, Idaho, some 19 cases of liquor, and to transport the same from the pool hall to a point about a mile away, and there deliver the whisky to one White. In count 2 defendants are charged with conspiracy to sell, within Bonner county, Idaho, certain intoxicating liquors, a more exact description of which was unknown to the grand jurors, the sale to be made in a manner and at a time and place by law prohibited. The overt acts charged are that Severns and Kirkpatrick did the same things already referred to as included within the overt acts alleged under count 1.

Plummer, Zent & Lovell, of Spokane, Wash., E. W. Wheelan and H. H. Taylor, both of Sandpoint, Idaho, and W. H. Plummer, of Spokane, Wash., for plaintiff in error Kirkpatrick.

O. J. Bandelin, of Sandpoint, Idaho, and Plummer, Zent & Lovell, and W. H. Plummer, all of Spokane, Wash., for plaintiff in error Thompson.

E. G. Davis, U. S. Atty., and James F. Ailshie, Jr., Asst. U. S. Atty., both of Boise, Idaho.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] Counsel for Kirkpatrick say that the trial was unfair because of "the attitude of the court," and particularize by citing several instances where a witness, having answered a question put by counsel, was asked by the judge whether he meant a definite matter as stated by the judge. For example, a witness in describing his movements said that he and defendant Kirkpatrick unloaded five cases of whisky; the court interposed by asking, "You mean sacks?" No objection was made on the trial by defendants' counsel, no exception was recorded, and appar-

ently during the trial no attention was paid to the matter. Plainly, such interrogatories by the court were intended, not to alter, but merely to clarify, the testimony. There is nothing from which it is to be inferred that the court, by asking the questions, displayed unfairness or prejudice.

[2, 3] In the instructions to the jury the court stated that it understood the theory of the government to be that there was a band of bootleggers with headquarters in and about Spokane; that they had arranged to have a large amount of liquor brought from Canada, through Sandpoint to Spokane, and that other bootleggers of which, defendants Severns and Thompson were two, learning of the importation in violation of law, conceived the idea of "hijacking"—that is, that Severns would arrange with the officers of Bonner county to seize the liquor under the guise of a lawful search, and, having so seized it, would use it as they saw fit, not in the enforcement of the law, but in violation of it, and that pursuant to this idea Severns had an understanding with Kirkpatrick as to what should be done, and that, having had the understanding as to carrying out the plan, Kirkpatrick advised Decker, then a deputy sheriff under Kirkpatrick, who was sheriff, that the liquor was expected and that he should co-operate with Severns and seize the liquor under the guise of a lawful search and seizure.

Defendants' counsel excepted on the ground that the instruction was outside of the evidence. Thereupon the court told the jury that what he had said in his preliminary statement was merely the theory of the government's case, and added:

"I did not intend to intimate, and now disclaim any intention of intimating that that theory is supported by the evidence. That is a question entirely for you, as to what the evidence will support."

It is contended that the instruction as first given was error, not cured by the supplemental charge. The evidence fails to show that there was a band of bootleggers with headquarters in Spokane, and that they had planned to have liquor brought into Bonner county. But the statement by the court was wholly immaterial and was without possible prejudice to defendants. What was material was the reference to another gang which would operate as described. That the evidence warranted the understanding of the court as to the theory of the prosecution with relation to such material matter is demonstrated by reference to the testimony, which was to this effect:

About April 1st Severns told one Wright, who, with one Hansen, had a pool hall in Sandpoint, that a shipment of liquor was coming from Canada through Sandpoint via the Spokane International Railroad. Wright testified that Severns told him that the proposition was that "it would be split fifty-fifty" with the sheriff's office and Severns. Wright told Decker, the deputy sheriff, what Severns said, and telephoned to Kirkpatrick, telling him of the conversation he had had with Severns, and said that Kirkpatrick told him he would see him later. On the night of March 31st, following this talk with Severns, Kirkpatrick told Decker that some whisky was coming, and delegated Decker to go and search the train, saying that Severns would be there, and that a man coming down on the train would also be there.

Kirkpatrick was away from Sandpoint in the beginning of the evening, but Decker went to Wright's pool hall, and there met Severns, and at about 10:30 that night Decker and Severns drove to the railroad depot. About 12:15 the train bound from Spokane to Eastport, Idaho, arrived at Sandpoint, and Decker and Severns received a quantity of liquor from some one in one of the cars. About 100 cases were taken out of one of the cars. Severns set the air brakes on the train. A load of whisky was then put in Decker's automobile and taken by him to the sheriff's office, where Decker met Kirkpatrick, who, in the meantime, had returned to his office. There is testimony that Kirkpatrick and Decker then went back to the depot for another load, and Kirkpatrick, with Decker, drove an automobile loaded with liquor to the house of a Dr. Page, where Decker delivered 5 cases of whisky to the doctor. In the early part of April another physician obtained some liquor from Kirkpatrick. Kirkpatrick and Decker then returned to the sheriff's office and Decker went home. Later that night Kirkpatrick telephoned to Decker that there was some shooting going on, and that some one had taken part of the whisky. One witness testified that Severns told him that the car coming down belonged to a "bunch of bootleggers in Spokane." The whole affair very soon became a matter of public talk, and Kirkpatrick told Decker to go to Wright and get more of the liquor and take it to "Whitey," one of the defendants, who had theretofore, through one Ulrich, arranged to purchase a certain amount from Kirkpatrick. Decker got a number of cases and delivered them to White. Ulrich offered to pay Decker, but Decker told him to keep the money and see Kirkpatrick.

[4] The evidence stated also disposes of the contention that there was no evidence of conspiracy to sell, as charged in the second count. The fact that there is no proof of actual sale cannot wipe out the evidence that there was a combination or concerted plan to seize the liquor with intent to sell, and that in pursuit of the plan the defendant caused some of it to be removed to a certain place, as set forth in the overt acts charged. The court carefully defined the law of conspiracy, and properly submitted questions of fact to the jury.

None of the assignments being well founded, judgment will be affirmed. So ordered.