### OCHOA v. UNITED STATES.
### No. 11665.

Circuit Court of Appeals, Ninth Circuit.
April 5, 1948.

342

Russell K. Lambeau, of Los Angeles, Cal., and Russell H. Yeager, of El Centro, Cal., for appellant.

James M. Carter, U. S. Atty., Ernest A. Tolin, Chief Asst. U. S. Atty., Alfred P. Chamie, Asst. U. S. Atty., of Hollywood, Cal., and Ernest Zack, Asst. U. S. Atty., of Los Angeles, Cal., for appellee.

Before MATHEWS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

By an indictment in two counts it was charged that appellant with premeditation murdered a Federal officer (in violation of 18 U.S.C.A. § 253 and § 454), and that appellant assaulted a Federal officer with a deadly weapon (in violation of 18 U.S.C. A. § 254). The jury found appellant guilty of first degree murder on count one, making no recommendation as to punishment, and guilty of assault with a deadly weapon on count two. The court accordingly sentenced appellant to suffer the death penalty. At the time of the commission of these offenses, appellant was under a suspended

sentence for other offenses against the laws of the United States.

The facts in this case are not in dispute. On March 11, 1947 two Federal immigration patrol inspectors, in the course of their official duties, and in uniforms, were stopping highway traffic south of Indio, California to check for aliens illegally in the United States. They stopped an automobile driven by appellant in which they found four Mexican aliens. The aliens were removed to the rear seat of the car driven by the inspectors and appellant was directed to drive his car ahead of them into the town of Indio. Before reaching this place, appellant, with the purpose of effecting an escape, feigned automotive trouble, stopped, and leaving his car walked back to the Government car which had pulled up behind him. Appellant had just been told to return to his car and that it would be pushed into Indio when he drew an automatic pistol from his pocket and fired at the still seated inspectors. One inspector was killed and one was wounded. Appellant fled to the nearby home of his sister where he was subsequently apprehended.

At the trial appellant's counsel admitted the killing, offering only the defense of insanity. The material issues in the case were the degree of the offense and appellant's mental competence.

■ The contention which appellant principally emphasizes on appeal is that the trial court's examination of the sole medical witness constituted prejudicial error. The witness, a physician specializing in psychiatry, was appointed to examine appellant before trial, was called by the court as its witness, as a part of appellant's case, and appellant's counsel was permitted by the court to ask this witness leading questions.

The witness's testimony continues through 48 pages of the typewritten reporter's transcript and does not admit of adequate recapitulation here. It may be remarked, however, that upon direct and cross examination the witness described the examination he had given to appellant and concluded that appellant has a deficient mentality, a split personality and an intel-ligence quotient of about 10½ years, but knew right from wrong; that on the date of the killing he was in a temper tantrum, but that the witness could not tell whether appellant would know right from wrong when in such a tantrum; that his condition was generally the same on the day of the examination as on the day of the killing; that at the time a person with appellant's personality and mentality is provoked he is insane; that by insane the witness meant he becomes unable to adjust himself to his environment and may become dangerous; that it is difficult to tell whether an otherwise normal person under extreme stress or in a rage is sane, but that any person who commits crime is not then exercising reason; that when appellant was in a trantrum he could devise a means of carrying out his objective and would be conscious of his acts, but would lack the reasoning of a normal individual.

The trial judge questioned the witness regarding the mental tests he had applied to appellant, and interrogated him at some length as to his meaning of insanity and as to the nature of appellant's condition. Appellant asserts that the manner of this questioning was biased, argumentative, belittling and more fitting a prosecutor's method of cross-examination. Upon careful study of the record, we do not agree with this contention.

In light of appellant's evidently greater acquaintance with the Spanish or Mexican language than with English, and his lack of much formal education, the judge's queries as to the applicability of these tests (which included knowledge and use of English words) to those of varied races and education, appear both natural and proper. The doctor's testimony respecting the meaning he ascribed to insanity in general and to appellant's condition in particular, while not at all evasive, was sufficiently obscure—considering the determination necessary to be reached by a lay jury—to suggest and justify the supplemental questions which the judge propounded. The testimony of the witness in reply to counsel left considerable to be desired so far as assisting the jury in resolving whether appellant was capable of knowing the nature of his act and of distinguish-

ing between right and wrong at the time. The perhaps unfortunate but definite hiatus between the concepts and parlance of psychiatry and of law apparently occasioned a confusion which the trial judge properly tried to clarify. The record leaves with us the conviction that this inquiry was an effort on the part of an able, conscientious and cautious judge to eliminate as far as possible any obscurities or confusion which might result from the testimony of a psychiatrist. We see nothing in the questions of the judge which tainted the trial with an element of unfairness to appellant. For a discussion of the subject, see: Holloway v. United States, 80 U.S.App.D.C. 3, 148 F.2d 665.

█ The examination by the court was not conducted in a manner which demonstrated any bias on his part against, or disregard of, the witness's testimony. Some of the questions, extracted by appellant in his brief, indicate that they called for answers previously covered by the testimony or evince occasional impatience of the court with the response. However, questions and comments of the court must be read in their context and viewed with a perspective of the whole proceedings. United States v. Warren, 2 Cir., 120 F.2d 211, 212. So reading and viewing them in this case, we cannot spell out error prejudicial to appellant.

█ We are well aware of the danger implicit in a situation where the judge assumes, or appears to assume, the role of advocate, and of the necessity for his sedulously maintaining an attitude of judicial impartiality between the accused and the accuser. One of the most frequently quoted of the long line of Federal decisions emphatically enunciating these precepts is Adler v. United States, 5 Cir., 182 F. 464. They are logical and reasonable restrictions but they in no wise dilute the salutary and wholesome rule that it is the right and duty of the Federal trial judge to facilitate, by direct participation, the orderly progress of a trial. Queries by the judge which aid in clarifying the testimony of witnesses, expedite the examination or confine it to relevant matters in order to arrive at the ultimate truth, are eminently proper so long as this authority is exercised in a non-prejudicial manner. Kirk v. United States, 8 Cir., 280 F. 506; Kirkpatrick v. United States, 9 Cir., 299 F. 225; Lewis v. United States, 6 Cir., 11 F.2d 745; Hargrove v. United States, 8 Cir., 25 F.2d 258; Callahan v. United States, 10 Cir., 35 F.2d 633.

It should additionally be observed that the trial judge in the case at bar gave complete and correct instructions on the question of insanity, and no complaint is made here concerning these instructions. He also explained to the jury his reason for conducting questioning during the trial, charged the jury not to assume that he held any personal opinion whatever on the matters to which questions were directed, and admonished them to disregard all comments of the court. We find nothing in the record to indicate that the jury disregarded these instructions. We are convinced, upon perusal of the record, that his interrogation was for the sole and legitimate purpose of educing all of the pertinent facts for the benefit of the jury, was not conducted in a wrongful manner, and did not result in error prejudicial to appellant.

█ Appellant next asserts that the prosecutor's closing argument to the jury was prejudicially improper. It is contended that certain of the prosecutor's remarks were without basis, inflammatory, or outside the record. Appellant particularly assails comments made by the prosecutor on the subjects of capital punishment and life imprisonment, on the Government's failure to produce another alienist, and on appellant's possible future conduct. These remarks were directly responsive to assertions relative thereto which were made in the argument of appellant's counsel. Though the argument is to be based upon the evidence or reasonable inference therefrom, it may also include statements in reply to those made by opposing counsel which might otherwise be improper. Rice v. United States, 2 Cir., 35 F.2d 689, 695; Malone v. United States, 7 Cir., 94 F.2d 281, 288; Baker v. United States, 8 Cir., 115 F. 2d 533, 544. In any event, we cannot but conclude that the prosecutor's summation, though forceful and perhaps containing some minor aberrations, was not infected with the prejudicial error asserted by appellant.

■ Furthermore, no objection was made during or following the prosecutor's argument, nor was the court requested to admonish the jury as to its force. "It is only in the most exceptional cases that a defendant can remain silent and interpose no objection and after verdict has been returned object that the prosecutor made improper remarks to the jury. United States v. Socony-Vacuum Oil Co. [310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129]; Crumpton v. United States, 138 U.S. 361, 11 S.Ct. 355, 34 L.Ed. 958; Dale v. United States, 7 Cir., 66 F.2d 666." Bratcher v. United States, 4 Cir., 149 F.2d 742, 746. On this record we cannot hold that this is such an "exceptional" case.

■ Appellant maintains that the jury was not correctly informed of its prerogative to recommend against capital punishment, in that they were not advised it would be unnecessary to find mitigating circumstances before they could recommend against capital punishment. The record shows this argument to be without merit.

■ It is provided by statute that the jury may qualify a verdict of guilty of murder in the first degree by adding "without capital punishment." 18 U.S.C.A. § 567. The Supreme Court has expressed the applicable rule under this statute as follows: "The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and consciences of the jury." Winston v. United States, 172 U.S. 303, 313, 19 S.Ct. 212, 215, 43 L.Ed. 456. See also Andres v. United States, 9 Cir., 163 F.2d 468. No authority brought to our attention requires that the jury be informed that their recommendation does not depend upon the existence of mitigating circumstances; to the contrary, the trial court is not permitted to define or limit in any way the jury's exercise of the right to qualify the verdict. The trial court in the instant case gave a clear and comprehensive instruction covering the jury's unrestricted right to decide in its own discretion whether appellant should suffer the death penalty. No more could or should have properly been done.

■ Finally, it is contended by appellant that the indictment was defective because it does not mention malice, which is contained in the statutory definition of the crime of murder in the first degree. 18 U.S.C.A. § 452. The indictment follows literally the language of the form for an "Indictment for Murder in the First Degree of Federal Officer" set forth in the Appendix of Forms to the Federal Rules of Criminal Procedure, form 1. 18 U.S.C.A. following section 687. It charges that appellant "with premeditation and by means of shooting murdered" the named Federal officer, engaged in his official duties.

■ The Federal Rules of Criminal Procedure have the effect of law, and Rule 58 thereof gives the Appendix of Forms official illustrative status. The precision and detail formerly held necessary to charge an offense are no longer required. See: Lowrey v. United States, 8 Cir., 161 F.2d 30, 35; United States v. Agnew, D.C. Pa., 6 F.R.D. 566. It is provided that "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c).

The precise point presented by appellant appears to be a novel one. In the absence of persuasive authority on the question, we have determined that the indictment is adequate because in our view the form employed can be considered to include all the essential facts constituting the offense; it is in harmony with the spirit and intent of the new Criminal Rules; and it was prescribed by the Supreme Court, which we must necessarily assume was cognizant of the requirements of the law. Furthermore, there is obviously absent any conceivable element of prejudice to appellant in this respect. The indictment refers to the statutes which were charged to have been violated, count one being prefaced with the citation of U.S.C., Title 18, Sections 253 and 454. The record discloses no demurrer to the indictment nor demand for a bill of particulars—an understandable omission, since the only conclusion logically to be drawn from reading the indictment is that it charges the crime of murder in the first degree. Finally, the court in its instructions to the jury not

346

only explained the several degrees of unlawful homicide, but gave complete and orthodox instructions defining the terms malice and malice aforethought. The issue of malice as an essential ingredient of the crime of murder in the first degree was fully and carefully presented in these instructions.

We conclude that the trial was free from prejudicial error and that the indictment was sufficient. Appellant was fairly tried and convicted and the judgment and sentence are affirmed.