**MARRON v. ATLANTIC REFINING CO.**

No. 9796.

United States Court of Appeals
Third Circuit.

Argued April 21, 1949.

Decided July 12, 1949.

Rehearing Denied Sept. 10, 1949.

See also 7 F.R.D. 660.

Abraham E. Freedman, Philadelphia, Pa. (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.

Otto Wolff, Jr., Philadelphia, Pa. (Lewis, Wolff & Gourlay, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from a judgment in favor of the defendant in a Jones Act, 46 U.S.C.A. § 688, suit for the wrongful death of a seaman.

Marron, the deceased, was thirty-four years old. He was making his first voyage as a seaman aboard appellee's S. S. Atlantic Refiner. He had been at sea something over ten days. On Sunday morning, March 31, 1946, the ship was proceeding up the Atlantic coast bound for Philadelphia. The weather was stormy and rough. The ship was pitching and taking heavy seas over her bow. Marron was off duty and seated in the mess room. While there he told several members of the crew that he was "going up on the bow * * * to look at

the water." Two other seamen, Fagan and Gallagher, watched Marron after he left the mess room and until he disappeared in the direction of the bow. At the time, the captain, third mate Maloney, and quartermaster Connor, were inside the pilot-house in the midship housing. They saw Marron on the catwalk walking rapidly toward the forecastle head. The captain and the mate ran out on the bridge and shouted to him to come back. The mate blew a handwhistle which Fagan and Gallagher heard. When Marron "had about arrived at the forecastle head", the captain ran into the wheel-house and ordered the engines stopped. This was in order that the ship would lose headway and so reduce the force of the seas piling over it. The captain also sounded the ship's whistle four or five times in an effort to attract Marron's attention. Marron walked up to the capstan on the windlass and leaned back on it and folded his arms. According to the mate, no sooner had he done this when a terrific sea came overboard "blocking everything f r o m sight." When Marron was next seen, he was "laying on the ladder leading to the gun turret". The captain thought that Marron had been standing at the capstan not much over a half minute prior to being struck by the sea. The quartermaster thought this period was between five and seven minutes. Marron's injuries were fatal and he died that afternoon.

The Trial Judge commenting in his charge on Marron's action, said: "It is practically undisputed that he voluntarily placed himself in a position of very great peril." How much Marron understood about what might happen, the Court properly left to the jury.

The attorney for the defense, in the course of his summation, told the jury in substance that if the jury should find for the plaintiff they would in effect, be accusing the captain and the mate who were on the bridge at the time of the accident, of being criminally negligent. At the conclusion of the summation the attorney for the plaintiff said to the Court: "If Your Honor please, will Your Honor charge the jury with respect to criminal negligence and point out to the jury that that has no place

in it? I do not want to go into that now, but Mr. Wolff made an issue of it. It is not a question whether these men were criminally negligent and had callous disregard; those are not the factors, and that is not the law. If you cover that in your charge I need not go into that at all. You just said you would cover the law, and that is a point that has not been referred to now and I don't think it has any place in the case—or would Your Honor care to have me charge it—discuss it?" The Court said: "Why don't you charge? Go ahead and discuss anything you want." The attorney asked: "Would Your Honor cover that too?" The Court replied: "I make no statement as to what I will do. You may say to the jury what you want to say." The attorney said: "Thank you, sir." He then proceeded with his rebuttal summation.

Appellant's sole point on appeal is that the Trial Court committed reversible error in connection with the above mentioned statement to the jury by defense counsel. Appellee insists that the point is not properly before us on the merits because at the time the District Court settled defense counsel's statement which had not been taken stenographically, that Court had been divested of jurisdiction of the cause.

Appellant's notice of appeal was filed on September 8, 1948. The record was filed on October 8, 1948. On November 4, 1948 the question of settling the statement of defendant's attorney to the jury was first brought to the attention of the District Judge and on December 20, 1948, he filed his settlement of what had been said. That supplemental record was transmitted to this court by the district court clerk on January 4, 1949. The record below was settled under Rule 75(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the pertinent part of which reads: "If anything material to either party is omitted from the record on appeal by error or accident or is misstated therein, the parties by stipulation, or the district court, either before or after the record is transmitted to the appellate court, or the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected, and if necessary that a supplemental

record shall be certified and transmitted by the clerk of the district court.  * * *"

■■ Appellee would confine the "error or accident" language of the rule to something done, or not done, by the district court clerk which results in a material omission from the record. We see no justification for such attempted interpretation. There is nothing expressed in the rule which would lead to that. The plain "error or accident" here was that the stenographer did not take the summations of counsel. Under Section 753(b) of Title 28 U.S.C.A., all proceedings in open court are required to be reported stenographically or by mechanical means by the official court reporter unless, in a non-criminal case, "the parties with the approval of the judge shall specifically agree to the contrary; * *." There is no assertion by either side of any agreement that the closing arguments were not to be taken by the reporter. The failure to record those arguments can be reasonably construed within the meaning of 75(h) as "error or accident" on the part of either the stenographer or counsel. It can be fairly assumed that any agreement by counsel regarding the recording or non-recording of the summations would have been approved by the Court. The cases cited by appellee do not deal with the kind of situation before us. Nor is there the slightest indication as suggested by the appellee that the lapse of time before the matter was presented to the District Judge caused him to forget the incident. In settling the statement of counsel the District Court said: "*I have a distinct recollection* that counsel for the defendant, in addressing the jury, said in substance that if the jury should find for the plaintiff they would in effect, be accusing the captain and mate, who were on the bridge at the time of the accident, of being criminally negligent." (Emphasis supplied.)

■■ Taking up the statement itself— it was improper and should not have been made. However, on the whole record we do not think that the incident constituted prejudicial error calling for a reversal of the judgment.

The defense was not weak; it had a strong case. As the matter was tried below, there were only two items of alleged negligence charged against the defendant. The first was that the captain had failed to ring the telephone affixed under the little apron at the very point of the bow. The ringing of the bell might have put Marron in even greater peril if he moved forward to answer it. That first proposition is not pressed on this appeal. The second was that the captain failed to send a man or men after Marron to warn him and bring him back. The time within which the captain would have had to accomplish this varies from almost instantly to, at most, seven minutes. During that interval the hand whistle and the ship's whistle had been blown and the ship's engines stopped.

The Trial Court in outlining the ship's duty to Marron, read from Harris v. Pennsylvania Railroad Co., 4 Cir., 50 F.2d 866, 868, as follows: " * * * it is implied in the contract that the ship shall use every reasonable means to save the life of a human being who has no other source of help. The universal custom of the sea demands as much wherever human life is in danger. The seaman's contract of employment requires it as a matter of right." And the Court continued stressing throughout his charge that the ship was bound to take every reasonable means to protect Marron.

Prior to his charge, the Court had occasion to interrupt plaintiff's counsel in his summation, telling the attorney that "The discussion of law is for the Court. You talk about the facts" and concluding by saying: "Members of the jury, you will not take the law as stated by counsel. I did not hear what Mr. Freedman was saying, except that he was telling you what the law is. That is for the Court to tell you, so there is no use of counsel discussing the law to you in this case."

At the outset of his charge the Court told the jury: "The facts in this case are entirely for you. I will tell you what the law is, and you will apply the law to your facts and bring in your verdict." After an excellent main charge the Court took up the requests of both sides. He closed his

charge by reading the ninth and tenth requests of the defense which stressed that plaintiff to recover must sustain her burden of proving by a preponderance of the evidence that *negligence* on the part of the defendant was the proximate cause of Marron's death.

In connection with the over-all picture this trial presents it should be noted that the remarks of plaintiff's attorney to the Court with reference to what defense counsel had said in summation concerning criminal negligence were really a query as to whether the Court intended to charge the jury with respect to criminal negligence. If so, counsel said, then he need not go into it "or (he asks the Court) would Your Honor have me charge it—discuss it?" The Court answered, "Why don't you charge? Go ahead and discuss anything you want." Then counsel desired to know whether the Court "would cover that too?" The Court declined to say what he would do, reiterating to counsel, "You may say to the jury what you want to say." To this counsel took no exception. He gave no indication that the result was not satisfactory to him. He simply thanked the Court and proceeded with his summation. Thereafter, at the conclusion of the charge and having dealt with the requests to charge of both sides, the Court addressing counsel said: "Now, gentlemen, I will be glad to hear from you if there is anything you have." And, said the Court, "If there is anything you wish to say to me, say it now." The attorneys made several suggestions which the Court disposed of. There was no mention of the Court not having specifically alluded to the defense attorney's statement about criminal negligence.

It is apparent that appellant's position on the merits of this question is based on the mistaken premise that objection was duly taken at the time to the remark of the defense attorney. That is not the fact as is seen from the above examination of the occurrence. Plaintiff's attorney, it is true, did not remain silent but he did not interpose an objection and certainly took no exception to the course pursued by the Trial Judge. And we do not see that this is the type of case where we should consider the statement on our own motion. Cf. United States v. Atkinson, 297 U.S. 157, 160, 56 S. Ct. 391, 80 L.Ed. 555. Nevertheless, because the defense statement was unwarranted, we have gone into it carefully and as we pointed out above we do not find it to have been of any substantial importance. We find no sound reason for thinking that the minds of the jurors would be so influenced by such incidental statement " * * * that they would not appraise the evidence objectively and dispassionately." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 230, 60 S.Ct. 811, 852, 84 L.Ed. 1129. As Mr. Justice Douglas said in that case, 310 U.S. at page 240, 60 S.Ct. at page 852: "Of course, appeals to passion and prejudice may so poison the minds of jurors even in a strong case that an accused may be deprived of a fair trial. But each case necessarily turns on its own facts. And where, as here, the record convinces us that these statements were minor aberrations in a prolonged trial and not cumulative evidence of a proceeding dominated by passion and prejudice, reversal would not promote the ends of justice." And see Ochoa v. United States, 9 Cir., 167 F.2d 341, 344. As said in Dunlop v. United States, 165 U.S. 486, at page 498, 17 S.Ct. 375, 379, 41 L. Ed. 799: "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since, in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation."

The judgment of the Lower Court will be affirmed.