UNITED STATES of America, Appellee,

v.

Adam BAGDASIAN, Appellant.

No. 8255.

United States Court of Appeals Fourth Circuit.

Argued April 19, 1961.

Decided May 29, 1961.

James B. Murphy and Solomon B. Levin, Baltimore, Md., for appellant.

Robert E. Cahill, Asst. U. S. Atty., Baltimore, Md. (Joseph D. Tydings, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

This appeal by Adam Bagdasian reveals a picaresque story of a fraud effectively perpetrated upon one who was willing to join in a scheme to defraud another. The defrauder, who is the appellant here, was tried without a jury and convicted on seven of the thirteen counts of an indictment charging him with devising a scheme to defraud and using interstate telephone and telegraph

facilities for the purpose of executing such scheme, in violation of Title 18 U.S.C.A. § 1343.[1] The sentence was imprisonment for one year on each count, the terms of imprisonment to run concurrently.

There was testimony tending to show that Bagdasian separately approached E. R. Culpepper of Norfolk, Virginia, and John Allen of Newport News, Virginia, and falsely represented to each that his name was George Simon, that he was employed as manager by a bookmaker, and was in a position to cheat his employer by changing office records after races had been run, so as to make it appear that bets had been placed on winning horses. He told Culpepper and Allen that if they phoned in their bets to a certain telephone number in Tacoma Park, Maryland, which he supplied them, he, Bagdasian, could and would arrange to place their bets on horses that had already won. The plan he proposed called for equal division of the spoils between himself and the bettor.

Culpepper was completely taken in. Initially, he was induced by Bagdasian to wire $1,500 from Norfolk to the Western Union Company office in Annapolis, Maryland, to be picked up by Bagdasian in the name of Larry Ford. Bagdasian later influenced Culpepper to wire additional sums to "Larry Ford" in care of the same Western Union office. Culpepper was persuaded to advance these additional monies by Bagdasian's representations that Culpepper had won various sums aggregating over a short period $26,000, but that for one reason or another it was necessary for Culpepper to advance more money before he could get his winnings. It was shown that Bagdasian, identifying himself as Larry Ford, personally collected from Western Union the monies so transmitted. Altogether, as a result of the various transactions, Culpepper was cheated out of $8,500 instead of sharing in the expected looting of Bagdasian's supposed bookmaker employer, who has never been found to exist.

Allen, on the other hand, testified that he never accepted the proposal to defraud Bagdasian's employer, but that he did place bets with the defendant, thinking that he was employed by a bookmaker. He was not required to put up betting money in advance, since Bagdasian told him, with simulated graciousness, that he had satisfied himself of Allen's financial responsibility. Apparently Allen had some independent knowledge or advice about racing, or was fortunate, and did phone in bets on horses that turned out to be actual winners. Then he was told by Bagdasian that he had won, but that it would now be necessary for him to put up a deposit of $5,000 before he could collect his winnings. More wary than Culpepper, Allen put up no money and was content to forego the reported winnings.

On this appeal Bagdasian asserts (1) that the indictment does not properly charge the offense; (2) that there was a fatal variance between indictment and proof; and (3) that the evidence is not legally sufficient to support the verdict.

As to the indictment, it was pointed out preliminarily that it does not allege that the defendant converted the money to his own use; but the short answer is that this is not an essential part of the crime of devising a fraudulent scheme and using interstate wire facilities for the purpose of executing such scheme.

1. 18 U.S.C.A. § 1343 reads as follows:
  "§ 1343. Fraud by wire, radio, or television
  "Whoever, having devised or intending to ̄devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both. Added July 16, 1952, c. 879, § 18(a), 66 Stat. 722, amended July 11, 1956, c. 561, 70 Stat. 523."

■ The principal fault found with the indictment by the appellant is that after reciting the representations made by the defendant to his intended victims, and averring that they were false and known by the defendant to be false, the indictment fails to show *"why* the representations alleged to be false were false in fact." Appellant's counsel explained that by "why," as here used, he means wherein, or in what respect. The point attempted to be made is that the indictment should have continued with a recital of the opposite of the representations, such as that the defendant was in fact not employed by the bookmaker, that he was not in a position to change losing bets into winners after the race had been run, etc. We do not perceive how in this case such a form of traverse would have been more enlightening than the allegation that was embodied in each count, namely, "that each and all of the pretenses, representations and promises made by the defendant, as listed [in the preceding paragraph] * * * were false and fraudulent and were at all times known by him to be false and fraudulent."

■ It is, of course, a fundamental requirement in criminal pleading that every element of an offense must be charged with sufficient clarity and specificity to enable the defendant to prepare his defense and to plead the judgment of conviction or acquittal in bar of a subsequent prosecution for the same offense. United States v. Debrow, 1953, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92. We think, however, that this indictment meets these requirements.

The defendant, in support of his contention, relies on Hass v. United States, 8 Cir., 1937, 93 F.2d 427, but that case is no authority for holding the present indictment insufficient. It is true that in Hass, wherein the indictment was upheld, the court noted that the defendant was informed how the representations were false. The court, however, did not intimate that a more detailed specificity than we have here is required. This is not a case in which representations attributed to a defendant involve many complicated details and he might not know in what respect the representation is claimed by the prosecutor to be false. All that was here required was the plain negation of the alleged misrepresentations which are unitary and uninvolved.

Likewise inapposite is United States v. Post, D.C.S.D.Fla.1902, 113 F. 852, 853 cited by the defendant, where the charge was a scheme to defraud by promising to "cure all diseases and poverty by mental science," but the defendant's good faith was not negatived. A later indictment against the same defendant, which did charge falsity to the defendant's knowledge, was upheld on appeal. Post v. United States, 5 Cir., 1905, 135 F. 1, 7 L.R.A. 989.

Finally, it is to be noted that the draftsmen of the present indictment followed closely form 3 suggested in the Appendix of Forms of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[2] Also, a mail fraud indictment was sustained against a like attack in United States v. Whitmore, D.C.S.D.Cal.1951, 97 F.Supp. 733, 737.

■ We need not dwell upon the appellant's contention that there was a variance between the charges made in the indictment and the proof. It is argued that the evidence in fact showed a scheme between Bagdasian, Culpepper and Allen to cheat Bagdasian's employer, of whose actual existence there is no evidence. The Judge, however, was well

2. At the bar of this court counsel for the defendant relied upon United States v. Larson, D.C.Alaska 1954, 125 F.Supp. 360, for the proposition that an indictment is not necessarily valid merely because it is drawn in accordance with a form contained in the Appendix of Forms of the Federal Rules of Criminal Procedure. But, cf. Ochoa v. United States, 9 Cir., 1948, 167 F.2d 341. The Larson case presents no analogy helpful to the defendant here. The present indictment would qualify as full compliance not only with the form but with the general requirements of the law.

justified in his view of the evidence that the plan to cheat the "employer" was a fiction held out to bait Culpepper and Allen, and that Bagdasian's real scheme was to cheat them by pretending that he was in league with them to cheat someone else.

■ The evidence amply supports the District Judge's verdict, despite the alleged discrepancies in the testimony. At most, the matters stressed go only to the credibility of witnesses—an issue not reviewable here. See United States v. Bagdasian, D.C.Md.1960, 188 F.Supp. 683.

Affirmed.