**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0367n.06
Filed: May 30, 2007

**No. 06-5689**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DORCAS "SUSIE" ORMSBY, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Appellant. | ) | |

Before: MARTIN and SUTTON, Circuit Judges; and GRAHAM, District Judge.[*]

SUTTON, Circuit Judge. Susie Ormsby takes issue with several aspects of her conviction for violating the federal mail fraud statute. Unable to find any merit in her arguments, we affirm.

I.

Susie Ormsby is the director of Meteer School, located in Paris, Kentucky. The school provides education and support to young, special-needs children from low-income families in the area. After some time in this role, Ormbsy determined that Meteer could also serve the community by directly assisting the families of its students. She created the Parents Advocacy, Teamwork, Children and Hope (Patch) program, through which Meteer could "get families off welfare," "have

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

families be more self-sufficient" and "decrease the [incidence] of child abuse and neglect" in the community. Supp. JA 40.

In the spring of 2000, Ranetta Wells, another Meteer employee, formed Parents Athletic Support to raise money for a youth baseball trip to Florida by (among other things) organizing bingo games. Although Kentucky generally bans gambling, it permits charitable gaming. *See* Ky. Rev. Stat. § 238.500 *et seq*. Because Parents Athletic Support did not have a charitable gaming license, its members volunteered to assist the games run by another charitable organization—the Fraternal Order of Police Lodge #59—in exchange for charitable contributions (representing an agreed-upon portion of the bingo proceeds) from the Fraternal Order of Police.

Wells asked Ormbsy to assist her with the bingo games, telling Ormsby that the games would "be a good way . . . to get some extra money for the school." JA 241. Ormsby agreed, and she took control of the project after Wells' involvement in it ended in the summer of 2000.

In sharing the proceeds from the bingo games, the Fraternal Order of Police wrote checks to Parents Athletic Support, though Ormsby told the organization that the money would benefit Meteer School. In June of that year, Ormsby also began leading bingo games for the Scott County (Kentucky) Touchdown Club, a booster group for the Scott County High School football team. She informed the group that its contributions would benefit Meteer School. She initially had the group write its checks directly to the school, but in 2001 directed it to make the checks out to Parents Athletic Support, which she described as a booster-type organization for Meteer School.

Ormsby continued operating bingo games under the auspices of the Fraternal Order of Police through April 26, 2001 and the Scott County Touchdown Club through February 15, 2004. In all, the two groups issued more than $130,000 in checks for Ormsby's "assistance," with some checks made out to Meteer School and others to Parents Athletic Support. Of this amount, Ormsby deposited a portion into Meteer School's bank account, and a small share went to other organizations. The vast majority of the checks—$122,447.78 by the district court's calculation—were converted by Ormsby to cash, often by forging Wells' endorsement on checks payable to Parents Athletic Support.

On October 7, 2005, a grand jury in the Eastern District of Kentucky charged Ormsby with 15 counts of mail fraud. *See* 18 U.S.C. § 1341. Each count identified a separate mailing allegedly connected to Ormsby's scheme to defraud the Fraternal Order of Police and the Scott County Touchdown Club: counts 1 through 10 each included a check from the Scott County Touchdown Club; counts 11 and 12 included two of the club's applications for renewal of their charitable organization license; counts 13 and 14 included the club's quarterly reports to the Kentucky Department of Charitable Gaming for the fourth quarter of 2000 and the first quarter of 2001, respectively; and count 15 included a letter from Jim McKee (the Scott County football coach) to the Department of Charitable Gaming regarding Parents Athletic Support.

On December 21, a jury found Ormsby guilty on counts 13 and 14. Ormsby moved to set aside the jury verdict. The district court denied the motion and sentenced Ormsby to a 33-month sentence, fined her $10,000 and ordered her to pay $122,447.78 in restitution.

II.

Ormsby makes several arguments on appeal: (1) that the evidence does not support the verdict; (2) that the district court shifted the burden of proof from the government to Ormsby by allowing an improper inference of guilt; (3) that the indictment was multiplicitous; (4) that the jury verdict is internally inconsistent; and (5) that the district court improperly instructed the jury.

*Sufficiency of the evidence.* We start, as we must, with the sufficiency claim. *See United States v. Aarons*, 718 F.2d 188, 189 n.1 (6th Cir. 1983) ("Where the sufficiency of the evidence is properly before us, we consider that issue first because it is determinative of whether" the Double Jeopardy Clause prevents "the appellant [from] be[ing] retried."). The federal mail fraud statute makes it a crime to "devise any scheme . . . for obtaining money . . . by means of false or fraudulent pretenses," when "for the purpose of executing such scheme" a person causes "any matter or thing . . . to be delivered by mail." 18 U.S.C. § 1341. Consistent with this language, we have identified two elements that the government must prove to sustain a mail fraud conviction: "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998).

Based on the evidence introduced at trial, "*any* rational trier of fact" readily could find "the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As to the scheme to defraud, Ormsby told the Fraternal Order of Police and the Scott County Touchdown Club that the bingo proceeds would benefit Meteer School and that Parents Athletic

- 4 -

Support was essentially an arm of the school. Relying on this information, the groups issued checks to Parents Athletic Support. Parents Athletic Support, as it turns out, was not affiliated with Meteer School. And most of the money ended up not in the bank accounts of Meteer School or even Parents Athletic Support, but in Ormbsy's pocket—often after she forged Wells' signature to endorse the checks.

As to the use of the mails to further this scheme, Scott County Touchdown Club mailed the quarterly reports forming the basis of the counts of conviction (counts 13 and 14) to the Kentucky Department of Charitable Gaming. As required by Kentucky regulations, these reports detailed the club's use of bingo proceeds for the relevant quarters, including those amounts directed to Meteer School through Parents Athletic Support. While the mailed report said one thing (that some of the bingo proceeds went to Meteer School through Parents Athletic Support), the reality was something else (that most of the money went to Ormsby). *See Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) ("To be part of the execution of the fraud . . . the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be incident to an essential part of the scheme or a step in the plot.") (internal quotation marks and brackets omitted); *United States v. Crossley*, 224 F.3d 847, 857 (6th Cir. 2000) ("[T]he government does not have to show that the defendant actually used the mails, but must show that . . . a reasonable person would have foreseen use of the mails.") (internal quotation marks omitted); *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997) (explaining that "the mailing [supporting a mail fraud conviction] need only be closely

related to the scheme and reasonably foreseeable as a result of the defendant's actions") (internal quotation marks omitted).

Ormsby resists this conclusion on the ground that the evidence does not show "what she did with the proceeds." Br. at 31. The question, however, is not what Ormsby did with the proceeds, it is what she did not do: give the money to Meteer School. Once the government showed that Ormsby acquired the money under false pretenses—by claiming she would give the money to Meteer School—it had no obligation to show anything more than that Ormsby never gave the money to the school. *See United States v. Neal*, No. 84-5780, 1985 WL 13112, at *2 (6th Cir. Mar. 22, 1985) ("Conversion of money to one's own use is not an essential element of the crime" of wire fraud.); *see also Lombardo v. United States*, 865 F.2d 155, 160 (7th Cir. 1989) (same); *United States v. Bagdasian*, 291 F.2d 163, 164 (4th Cir. 1961) (same).

Ormsby persists that she used the bingo proceeds to "help the poor people of Bourbon County," which in her view was consistent with the mission of Meteer School and the related Patch program. Br. at 30. To Ormsby's credit, the evidence indeed shows she gave considerable amounts of cash to others in the community during the time she was receiving the bingo money. *See, e.g.*, Supp. JA 15 (Sabrina Campbell testifying that Ormsby gave her in excess of $3,000 to help her with school expenses, the rent on her house and a car down payment); Supp. JA 26 (Emma Griggs testifying that Ormbsy helped her niece Tina, who was raising eight children, by buying an air conditioner for her asthmatic son, paying for her utilities and giving her money for diapers and

medicine); Supp. JA 32–33 (George Jones testifying that Ormsby gave him hundreds of dollars, helping him pay utility bills, fix his car and buy clothes).

But as the government points out, all of this evidence remains consistent with its theory that Ormsby used the money in her personal capacity, not in her capacity as director of Meteer School. *See, e.g.*, Supp. JA 15 ("[Ormsby] helped me with my rent, . . . she helped me pay my classes . . . [and] she gave me the [rent] deposit and the first month of my electric."); Supp. JA 26 ("[Ormsby] bought the air conditioner[,] . . . [s]he gave me the money to go pay the gas bill" and she gave money for "diapers and medicine."); Supp. JA 32–33 ("[Ormsby] gave us some help at one time on our utilities, . . . she gave me money to get my brakes fixed . . . [and] she gave my little boy some shoes."); *see also* Supp. JA 47 (Ormsby testifying that people who received bingo money "knew it wasn't [from] Patch").

Nor, contrary to Ormsby's suggestion, does it make a difference that the indictment says she "diverted to her *personal benefit* the sum of $122,447.78." JA 21 (emphasis added). In one sense, the evidence does show that the money benefitted Ormsby personally because she distributed it in her personal capacity (and as if the money was coming from her own funds), not in her capacity as director of Meteer School (and as if the money was coming from the school). At any rate, the government did not transform the elements of a mail fraud violation by including this allegation in the indictment. *Cf. United States v. Miller*, 471 U.S. 130, 136 (1985) ("As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the

right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.").

*Burden of proof.* Ormsby maintains that the district court effectively made her prove her innocence. The district court, however, clearly explained to the jury that the government bore the burden of establishing guilt. *See, e.g.*, JA 263 ("[T]he Defendant starts the trial with a clean slate . . . and the law presumes she is innocent. This presumption of innocence stays with her unless the Government presents evidence here in court that overcomes that presumption and convinces you beyond a reasonable doubt that she is guilty.").

The district court also did not place the burden of proof on her by declining to add this language to the "good faith defense" instruction: "you must acquit Susie Ormsby if you believe that there is a reasonable doubt as to whether . . . she used any of the funds she received from the bingo games for her own benefit." JA 101. As we have shown, fraudulently obtained funds need not be used for one's personal benefit (however defined) to support a fraud conviction. *See Neal*, 1985 WL 13112, at *2; *see also Lombardo*, 865 F.2d at 160; *Bagdasian*, 291 F.2d at 164; D. Ct. Op. at 8 ("The suggestion that the instruction should have informed the jury that if the funds were used for *a* charitable purpose, the defendant must be found not guilty, is equally faulty; the misrepresentation pertains to *which* charitable purpose the funds were intended to support."). Were the rule otherwise, one could escape a fraud charge in connection with charitable giving simply by showing that the money ended up serving *some* charitable purpose, even though it was not the purpose for which the donor gave the money. Good as Ormsby may have been to share this money with others in the

community, the donations were meant to go to the Meteer School, not to the friends of Susie Ormsby.

*Multiplicitous indictment.* Ormsby next argues that the indictment's listing of 15 mailings as separate violations of the mail fraud statute violates the rule against multiplicitous indictments. Because she raised this argument for the first time in a brief supporting her post-conviction motion for acquittal, *see* JA 44–45, it is waived. *See* Fed. R. Crim. P. 12(b)(3)(B) ("[M]otion[s] alleging a defect in the indictment" "must be raised before trial."); *United States v. Hart*, 70 F.3d 854, 860 (6th Cir. 1995) (holding that defendant waived multiplicitous indictment claim when he did not raise it prior to trial). The argument also lacks merit. *See Badders v. United States*, 240 U.S. 391, 394 (1916) ("[T]here is no doubt that the law may make each putting of a letter into the postoffice a separate offense."); *United States v. Stull*, 743 F.2d 439, 444–45 (6th Cir. 1984) ("Use of the federal mails is not only a jurisdictional requirement, it is the gist of the crime of mail fraud. Each use of the mails in furtherance of a scheme to defraud therefore may be separately and cumulatively punished.") (internal citation omitted).

*Internal inconsistency of the verdict.* Noting that the jury acquitted her on 13 of the 15 counts charged, Ormsby says that the verdict must be internally inconsistent. Not only does an inconsistent verdict fail to "provide a basis for revers[ing]" a conviction, *United States v. Samuels*, 308 F.3d 662, 669 (6th Cir. 2002), but this conviction also is not inconsistent. Each mail fraud charge required evidence of a separate mailing. And the government's evidence relating to use of the mails was far stronger on the counts of conviction than on the other counts. *Compare* JA 238

(Susan Clay testifying that she recalled mailing the quarterly reports that formed the basis of Ormsby's conviction), *with, e.g.*, JA 189 (McKee testifying that he did not know whether checks from the Scott County Touchdown Club "were mailed, hand-delivered, or went to the moon").

*Jury Instructions*. Ormsby claims that the jury instructions did not allow the jury to acquit her on any one count even if it found that the item referenced in that count was not mailed. The jury instructions, however, created no such problem. The court explained that, although Ormbsy had been charged with several crimes, "this should not influence [the jury's] decision in any way." JA 265. "For each charge," the court emphasized, the jury "must decide whether the Government has . . . presented proof beyond a reasonable doubt that the Defendant is guilty of that particular charge." *Id*. The court then said that each count represented a charge of mail fraud, and that to find Ormsby guilty of mail fraud, the jury "must find that the Government has proved each and every one of the following elements beyond a reasonable doubt." *Id*. One of the elements was that "the Defendant used the mail or caused another to use the mail in furtherance of the scheme." JA 266.

Seizing upon language the district court used to wrap up this part of its instructions, Ormsby says that the instructions left a different impression. The court directed the jury to "return[] a guilty verdict on these charges" if it was "convinced that the Government ha[d] proved all of the elements" and to "find the Defendant not guilty of these charges" if it had "a reasonable doubt about any one of the elements." JA 267. According to Ormsby, this instruction charged the jury with making only one decision with regard to all fifteen counts of mail fraud. We do not see it this way. Not only does this language fail to say what Ormsby claims it says and not only does it contradict the explicit

language of the district court's earlier instruction to consider each count separately, but Ormsby's

argument is also not even supported by the jury's decision, which indeed acquitted on some charges

and convicted on others.

III.

For these reasons, we affirm.