**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Oscar Alfonso CASTRILLON, Defendant-Appellee.**

No. 82–1722.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1983.

Decided Sept. 27, 1983.

Brian Sun, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Carl E. Dougals, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellee.

Before FERGUSON and BOOCHEVER, Circuit Judges, and COYLE,* District Judge.

BOOCHEVER, Circuit Judge.

This case concerns the voluntariness of Castrillon's consent to an x-ray search which revealed that he was smuggling in his stomach balloons containing cocaine. The government appeals from the district court's orders granting Castrillon's motion

to suppress evidence and denying the government's motion for reconsideration. We note jurisdiction under 18 U.S.C. § 3731 (1976). Because we are unable, without more specific findings of fact, to determine whether the trial court clearly erred in holding that the consent was not voluntary, we reverse and remand to the district court for a statement of its essential factual findings as required by Fed.R.Crim.P. 12(e).

The government contends that Castrillon voluntarily consented to the x-ray examination and, if not, that the search was justified by clear indication that Castrillon was a balloon swallower. It also argues that even if Castrillon did not voluntarily consent to the x-ray, the challenged evidence is admissible because the government had sufficient suspicion to detain Castrillon long enough to see if he passed contraband through normal bodily functions. Alternatively, the government seeks reconsideration of the clear indication test of *United States v. Ek*, 676 F.2d 379, 382 (9th Cir. 1982) and establishment of real suspicion as the justification for an x-ray search.

We hold that the district court did not err in finding that there was no clear indication of balloon-swallowing justifying the x-ray examination. We are bound by the *Ek* decision on the applicable standard for x-ray searches, and decline to reconsider the clear indication test at this time. *See United States v. Shreve*, 697 F.2d 873, 874 (9th Cir.1983). Because we remand for factual findings as to the voluntariness of consent, we also decline to reach the issue of whether the government would have been justified in detaining Castrillon to see if he excreted contraband.

We emphasize at the outset that suppression of evidence under the exclusionary rule is intended in part as a deterrent to police tactics which violate fourth amendment rights. *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968). Therefore one of our relevant considerations is the nature of the customs officials'

---

* Hon. Robert E. Coyle, United States District Judge for the Central District of California, sitting by designation.

actions in this case and the possible deterrent effect which suppression of the cocaine might have on future customs enforcement activity.

## I.

The parties dispute many of the facts on appeal. On July 3, 1982, at approximately 1:00 a.m., Castrillon arrived at Los Angeles International Airport from Colombia. At the primary inspection area, Castrillon told the customs examiner that he intended to purchase machine repair parts in the United States. He later testified that he showed the examiner machine diagrams and documents related to his intended purchase.

Castrillon was sent to speak with Customs Inspector Talamantes, who questioned Castrillon in Spanish. Castrillon testified that he could understand only very little of what Talamantes said because the inspector spoke to him in a Spanish difficult for Castrillon to comprehend. The government claims that Castrillon could not produce any documentation to substantiate his story about buying machine parts. Castrillon said that Talamantes did not ask for the machine diagrams he was carrying.

The government contends that Castrillon was questioned further in Spanish by Inspector Sanchez. A third inspector conducted a pat-down search of Castrillon and searched his luggage. Inspector Talamantes interviewed Castrillon again and concluded that he should be x-rayed as a probable drug smuggler because Castrillon (1) gave vague and inconsistent responses to Talamantes' questions; (2) was unable to speak English; (3) had no friends or ties in the United States; and (4) was travelling with $2,000.00 in United States currency. The government claims that Talamantes then told Castrillon in Spanish that customs officials wished to x-ray Castrillon's stomach and that he had the right to refuse. Castrillon consented orally. He was moved to another room and strip searched in what Castrillon described as a rough manner.

The government claims that Castrillon then signed, without question, a Spanish-language consent form for the x-ray after Inspector Sanchez explained it to him in Spanish. Castrillon testified that he never spoke with Sanchez that evening. He admits he signed the form, but says he has had very little schooling, can read only a little bit, and signed the form without reading it. He also claims that no one read or explained the consent form to him and that he did not know that he was consenting to the x-ray examination when he signed the form. He feared a beating by police and signed only because he was frightened.

Castrillon was taken to a nearby hospital and shown a hospital consent form in English. The government contends that Talamantes explained it in Spanish. Castrillon testified that the form was not translated into Spanish. Castrillon signed this second consent form and was x-rayed. The x-rays showed foreign objects in Castrillon's stomach. Inspector Sanchez then arrested Castrillon and, according to the government, read his *Miranda* rights to him in Spanish. Castrillon testified that he was not advised of his right not to speak without an attorney present. Between July 3–4, Castrillon excreted 83 balloons found to contain cocaine. He was charged with unlawful possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1976). He pled not guilty and moved to suppress the cocaine.

At the suppression hearing, the defense called a court interpreter, Lenne Grusky, who testified that she had heard Inspector Talamantes speak Spanish in court on two previous occasions and that in her opinion, he could not effectively communicate in Spanish. She criticized Talamantes' grammar and pronunciation of the word "x-ray". She also criticized Sanchez' pronunciation of the word "consent".

The district court granted the motion to suppress. It also found that there was no clear indication that Castrillon was carrying contraband in his body.

At the hearing on the motion for reconsideration, government witnesses testified that Inspectors Talamantes and Sanchez could communicate effectively in Spanish to

native South Americans. Evidence was submitted regarding Talamantes' past successes in spotting balloon-swallowers. Defense witness Grusky testified, however, that the problems she perceived in Talamantes' and Sanchez' Spanish grammar and pronunciation could have been corrected by the time they were interviewed by the government's experts. The motion for reconsideration was denied. This appeal followed.

## II.

We first address the issue whether the x-ray examination was lawful because customs officials had a clear indication, as required by *United States v. Ek,* 676 F.2d 379, 382 (9th Cir.1982), that Castrillon was carrying contraband in his body. Applying either the clearly erroneous standard or exercising independent review, *see Ek,* 676 F.2d at 382 n. 3, we affirm the district court's holding that there was no clear indication.

The government argues that the x-ray search was justified because Castrillon spoke only Spanish, gave vague responses to Talamantes' questions, had no U.S. ties, and carried a large amount of U.S. currency. It also emphasizes Talamantes' past successes in spotting drug smugglers. A finding of clear indication requires more specific, articulable facts.

Facts involving more suspicious circumstances than those present here have not in the past met the clear indication standard. In *United States v. Shields,* 453 F.2d 1235 (9th Cir.) (per curiam), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1615, 31 L.Ed.2d 821 (1972), for instance, the court stated that a clear indication would not exist where the suspect was highly nervous, standing rigidly, had fresh needlemarks on her arms, and had just made about an hour visit to Mexico. *Id.* at 1236. In *United States v. Quintero-Castro,* 705 F.2d 1099, 1100 (9th Cir.1983) (per curiam), the court held that the lower court could not properly find a clear indication where the defendant was nervous, paid cash, planned to stay at a hotel although he had relatives in the area, told conflicting stories, and was coming from a drug source country.

Conversely, cases where a finding of clear indication was proper involved greater suspicion. *See, e.g., United States v. Couch,* 688 F.2d 599, 605–606 (9th Cir.1982) (clear indication existed where agents corroborated reliable informant's detailed tip before seeking court order for x-ray); *United States v. Aman,* 624 F.2d 911, 913 (9th Cir.1980) (clear indication existed where suspect was disoriented, had restricted body movements, had previously been involved in narcotics smuggling, and was carrying items used in body cavity smuggling). The facts in Castrillon's case do not constitute clear indication.

## III.

Because we hold that there was no clear indication that Castrillon was a balloon-swallower, we turn now to the question whether there was voluntary consent. The district court concluded that the government failed to show that Castrillon gave meaningful, knowing, and voluntary consent to the x-ray examination. Our task is to review the district court's finding under the clearly erroneous standard. *United States v. Faherty,* 692 F.2d 1258, 1260 (9th Cir.1982). In this case, however, we cannot undertake that task because the district court failed to make a sufficient record of its factual findings in support of its ruling on the motion to suppress.

Fed.R.Crim.P. 12(e) states that "[w]here factual issues are involved in determining a [pretrial] motion, the court shall state its essential findings on the record." Such a record is necessary to our review. *See United States v. Robertson,* 606 F.2d 853, 859–60 (9th Cir.1979).

Compliance with the rule 12(e) requirement is particularly important in a case such as this, where we examine "all the surrounding circumstances" as required by *Schneckloth v. Bustamonte,* 412 U.S. 218, 229, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). Factual subtleties may well affect a determination of voluntariness under this test. To aid our review in this case and our

efforts to provide guidance to trial courts obligated to make these difficult determinations, we require a statement on the record of those factual findings upon which the district court based its grant of the motion to suppress.

The district court implied it had made a number of specific factual findings when it ruled on the pretrial motions. It commented, for example, that the Spanish spoken in North America differs from that spoken in South America, which would create confusion on the part of the government agents and Castrillon. It also stated that the inspectors incorrectly communicated with Castrillon most, if not all, of the times they sought consent. While these comments tend to support the district court's conclusion that consent was not voluntary, they are insufficient.

The facts in this case present a close question as to whether the trial court clearly erred. The customs officials went to great lengths in their attempt to obtain voluntary consent to the x-ray examination. The government claims that Castrillon gave at least one oral and two written consents, including one written in Spanish, and that he had earlier demonstrated literacy in Spanish by filling out a customs declaration form printed in Spanish. Grusky, the court interpreter, based her criticisms of the inspectors' language skills on hearing them speak for only short periods in court. We need a more detailed record of factual find-

ings in order to conduct our inquiry. On remand, the court should make findings, among others, of the following disputed facts:

1. Did Castrillon's responses to the customs agents' questions indicate that he understood their spoken Spanish?

2. Did Sanchez explain in Spanish the Spanish-language consent form before Castrillon signed it?

3. Was Castrillon lying when he said that he never spoke with Sanchez, and therefore the consent form was not explained to him before he signed it?

4. Did Castrillon exhibit an understanding of written Spanish by filling out customs forms in Spanish?

5. Was Castrillon capable of understanding the Spanish-language consent form before he signed it?

6. Did Castrillon know he was signing a consent form when he signed it?

7. If not, why not?

8. Was there any objective conduct by the customs personnel that would reasonably have placed a person in Castrillon's position in apprehension of a beating for refusal to sign the consent form? [1]

9. Was Castrillon subjected to a rough strip search?

10. Would a rough strip search be sufficient to place a person in Castrillon's posi-

1. In *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court stated that "[i]n examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of ... the possibly vulnerable subjective state of the person who consents." *Id.* at 229, 93 S.Ct. at 2048. The court in this case should therefore consider Castrillon's alleged subjective fear of a police beating as one of the surrounding circumstances. Another relevant factor, however, is the reasonableness of that fear. The test is not whether a reasonable person would fear a beating for refusal to consent, but whether a person in Castrillon's position would reasonably have feared a beating. Here we require that the court examine the objective conduct of the customs agents. To look only to Castrillon's subjective fears, without considering the reasonableness of his

alleged state of mind, would unduly hamper application of the totality of the circumstances test. Thus in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the Court rejected the argument that the stopping and questioning of the defendant would reasonably have appeared coercive to the defendant, who was a twenty-two year old black woman of limited education in the presence of white male government agents. *Id.* at 558, 100 S.Ct. at 1879. The Court examined the totality of the circumstances—the possible subjective fears of the defendant, and the facts that she was plainly capable of knowing consent, she was twice told that she was free to refuse consent, and there were no threats or any show of force—and concluded that the defendant voluntarily consented to the search. *Id.* at 558–59, 100 S.Ct. at 1879.

tion in apprehension of a beating for refusal to consent to an x-ray search?

11. When Castrillon said he signed the form because he feared a beating by police, what did he think he was signing?

12. Did Talamantes explain in Spanish comprehensible to Castrillon the English-language consent form shown to Castrillon at the hospital?

13. Was Castrillon advised of his right not to speak without an attorney being present? If so, does his statement that he did not receive *Miranda* warnings reflect adversely on his credibility?

We therefore reverse and remand with instructions to make specific findings of fact on the record. In making such findings, the district court may reconsider its rulings if appropriate. This panel will retain jurisdiction in this case for all further appeals. We need not reach the other issues raised on appeal at this stage in the proceedings.

REVERSED and REMANDED.