UNITED STATES of America,
Plaintiff–Appellee,

v.

Pedro PRIETO–VILLA,
Defendant–Appellant.

No. 89–50150.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1989.

Decided Aug. 6, 1990.

---

602

Michael D. Abzug, Los Angeles, Cal., for defendant-appellant.

Patrick K. O'Toole, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, FERGUSON and BOOCHEVER, Circuit Judges.

FERGUSON, Circuit Judge:

Pedro Prieto–Villa was arrested when police encountered him in an apartment they visited and searched in the course of an investigation into a drug-smuggling conspiracy. Prieto entered a conditional plea of guilty to possession of cocaine with intent to distribute. He appeals the district court's denial of his motion to suppress the cocaine found on his person and his post-arrest statements, and the computation of his sentence under the Sentencing Guidelines. Codefendants Alfredo Apodaca Villegas, who was also arrested in the apartment, and Gabriel Salas–Moreno, who was arrested a day earlier at the border, have appealed their convictions, and the judgment of the district court with regard to them has been affirmed by an unpublished memorandum disposition of this court.

■ After the suppression hearing, the district court issued an order which stated that there was probable cause for the arrest of Prieto but which made no factual findings regarding the circumstances which gave rise to this conclusion. Federal Rule of Criminal Procedure 12(e) requires the judge to state his essential findings on the record. The determination of probable cause to arrest is heavily dependent on the facts of a particular case. Since the findings which would permit review of this determination are absent here, we remand for factual findings by the district court.

FACTS AND PROCEEDINGS BELOW

Pedro Prieto–Villa was arrested in the course of a police search of an apartment during the investigation of a drug conspiracy. On June 8, 1988, Gabriel Salas–Moreno and Karen Meyer were arrested at the Mexican border with 120 kilograms of cocaine. Karen Meyer identified a hotel in West Covina, California as the destination for delivery of the cocaine. In the posses-

sion of Meyer and Salas, police found a motel receipt showing a telephone call a week earlier to a number in Covina, California which belonged to Alfredo Apodaca Villegas.

On June 9, Drug Enforcement Agency (DEA) Agent Steven Georges learned of the arrest and began an investigation in the Los Angeles area. Agent Georges linked the telephone number with Villegas' apartment in Covina and moved to investigate the apartment as a possible destination for the drug delivery. DEA agents observed the apartment and began initial proceedings for obtaining a warrant. When they received word that three men had arrived at the apartment, they proceeded to the apartment without a warrant.

The agents testified later that the front door was open when they approached and knocked. Seated inside the apartment were Villegas, the appellant Prieto, and a third man named Luis Vargas Tovar. The agents explained that they were conducting a narcotics investigation and asked for Villegas. Tovar, who had come to the door, admitted the police into the apartment. Villegas consented to a search of the apartment, during which a pound of cocaine and $650,000 in cash were found. There was testimony at the suppression hearing that the drugs and money were found in closed containers in a closet in an upstairs bedroom. Testimony differed on whether additional money was later located in another container in the same closet by dogs brought in by the canine unit. After the officers found the drugs and money, they arrested all three men. At the suppression hearing, Agent Georges and Los Angeles County Sheriff's Department Officer Paul McGraw testified that during the search they also found a gun and various documents bearing the names of Salas and Villegas.

There is conflicting evidence regarding Prieto in the period before he was arrested.

Agent Georges testified that Prieto got up when the police came in and appeared to "overreact" to their presence, closing his eyes, shaking his head, and "slapping" his head. Agent Georges later testified that Tovar had a similar reaction; both Tovar and Prieto were "hitting" their heads and reacted very strongly to the appearance of the police. Officer McGraw testified that Prieto simply sat as he had before. Both officers testified that the men were told to remain seated. Prieto was told to keep his hands in view.

It is not clear how many times or at what points Prieto was patted down or searched. Officer McGraw first testified that the three men had been patted down but stated that he had not done the pat-down himself. Later, during questioning by Prieto's attorney, Officer McGraw stated that he was *"almost positive* somebody would have done [a pat-down]" during this period. (Emphasis added). Agent Georges testified that after cocaine and money were found in containers in the upstairs bedroom, Prieto was told that he was under arrest, handcuffed and patted down; a "small amount" of cocaine was found on him. Agent Georges did not mention an earlier pat-down. There was no testimony regarding the size and shape of the vial of cocaine found on Prieto, or where on his person the cocaine was found. After his arrest, Prieto admitted to adapting cars for use in drug smuggling.

Prieto moved to suppress the cocaine found on his person and his post-arrest statements, arguing that he had been illegally detained and that there was no probable cause for his arrest.[1] The district court heard testimony at the suppression hearing and issued an order which focused on the initial investigation by police and facts regarding the police entry and the consent to search. The order made factual findings regarding the entry and search of the apartment, and the court found that

---

1. Prieto also moved to suppress all the evidence found at the apartment, arguing that the entry and search by police was illegal. In an unpublished disposition, we affirmed the denial of a codefendant's motion to suppress based on the factual findings regarding consent to search made by the district court. Having already determined this argument lacked merit, we review here only Prieto's motion to suppress the cocaine found on his person and his own post-arrest statements.

Villegas' consent to the search was free and voluntary. The court noted the drugs, money, documents, and "weapon" found in the search, but made no factual findings regarding the nature of the documents, the time of discovery of documents or the weapon, or events which took place during the period when the search was conducted and the men were detained downstairs. Finally, the court stated without elaboration that "there was probable cause for the arrest of ... Pedro Prieto–Villa." Prieto entered a conditional plea of guilty and appeals the denial of his motion to suppress. He also appeals the calculation of his sentence, arguing that he should have been found to be a minor participant under Section 3B1.2 of the Sentencing Guidelines.

## DISCUSSION

■ Motions to suppress are reviewed de novo. *United States v. Yarbrough*, 852 F.2d 1522, 1533 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). The ultimate conclusion of the presence or absence of probable cause is a mixed question of law and fact reviewed de novo. *United States v. Smith*, 790 F.2d 789, 791 (9th Cir.1986). The underlying facts as found by the district court are reviewed for clear error. *United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir.), *cert. denied*, 476 U.S. 1185, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986).

### I.

■ The Fourth Amendment protects the "legitimate expectations of privacy" of persons, not places. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra*, 444 U.S. at 91, 100 S.Ct. at 342. Even when police have a warrant, the mere fact that a person is in the company of persons for whom a warrant has been issued does not

constitute probable cause. *United States v. Vaughn*, 718 F.2d 332, 334 n. 5 (9th Cir.1983) (citing *Ybarra v. Illinois, supra*). In *Vaughn*, when a car was searched pursuant to a warrant, there nevertheless was no probable cause to arrest or search a passenger because the police lacked information linking him with the drug smuggling conspiracy. *Id.* at 334.

■ The government first argues that probable cause to arrest existed because of the discovery of documents linking the apartment with Salas, which tied that location to the large quantity of cocaine Salas had been smuggling, and the discovery of a gun in the apartment, as well as the cocaine and $650,000. However, the judge made no findings regarding the gun and no particular findings regarding the documents; based on testimony at the suppression hearing, they seem to have been found after Prieto had been arrested.

Absent findings regarding what the documents revealed, when these items were discovered, and how they implicated Prieto in or showed his knowledge of the criminal enterprise, it cannot be determined whether the gun and documents established probable cause for Prieto's arrest. No factual findings were made regarding the location of the drugs and money, and what factors might make it probable that nonresidents in the apartment knew of them. Although the district court found that Agent Georges "assumed" that delivery was actually planned for the apartment, the only information the police had received actually pointed to a different location. In the absence of factual findings regarding the time at which delivery of the drugs was planned, we cannot determine the relationship between this assumption by the police and why they may have suspected involvement by a nonresident present at a particular time. *Cf. United States v. Baron*, 860 F.2d 911, 916–17 (9th Cir.1988) (known criminal activity contemporaneous with association important to determination of probable cause to arrest), *cert. denied*, —— U.S. ——, 109 S.Ct. 1944, 104 L.Ed.2d 414 (1989).

■ The government argues in the alternative that Prieto was detained based on founded suspicion which ripened into probable cause to arrest. This argument raises related questions of fact and law. We have held in *United States v. Ramos–Zaragosa*, 516 F.2d 141, 144 (9th Cir.1975), that an arrest, unsupported by probable cause, cannot be saved by redesignating it as a *Terry* stop. Therefore, the government must show facts which demonstrate the ripening of probable cause for arrest.

■ Each of the investigatory measures taken must also have been justified. First, there must be reasonable suspicion to justify detention. In *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), reasonable suspicion was provided with relation to the resident of an apartment by the existence of a warrant. 452 U.S. at 705, 101 S.Ct. at 2595.[2] Further, there must be reasonable suspicion to justify frisking a person who is detained. "Persons detained during a search for evidence cannot be searched according to *Ybarra* simply because they are there." *Vaughn*, 718 F.2d at 335 n. 7. "The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." *Ybarra*, 444 U.S. at 94, 100 S.Ct. at 343.

■ Finally, the permissible scope of the frisk is limited to the search for weapons. *See, e.g., Vaughn*, 718 F.2d at 335–36. Pat-downs must be based on particularized facts showing reason to suspect the individ-ual may be armed. *United States v. Salas*, 879 F.2d 530, 535 (9th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989). In *Salas*, the concern that an individual might be armed was based on his suspected involvement in narcotics dealing, evasive driving behavior, and the dangers attendant on a vehicle stop at a late hour. *Id.*[3] Reasonable suspicion is determined by the "totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Since determinations of dangerousness as well as other circumstances relevant to this determination are dependent on the facts of a given situation, appellate review is not possible without factual findings not made here.

We are also unable to evaluate Prieto's arguments without further factual findings. He claims that police had no grounds for suspicion which would justify an initial detention. He also argues that he was effectively arrested, not merely detained, before he was officially placed under arrest. *See, e.g., Baron*, 860 F.2d at 915–16. The factual questions raised by his argument concerning the grounds for detention are identical to those raised by the government's argument that probable cause ripened from reasonable suspicion. We cannot evaluate Prieto's argument as to the existence of grounds for detention without factual findings as to what happened when police arrived. We are similarly unable to determine whether he was effectively under arrest during this period without factual findings as to the events which took place.

**2.** In *Vaughn*, we upheld the detention of a passenger while a car was searched pursuant to a warrant on the basis that incriminating evidence might have been found which would have justified his arrest. 718 F.2d at 334–35. *Vaughn* does not indicate what type of incriminating evidence found in the car would have justified his arrest. In *United States v. Heiden*, 508 F.2d 898 (9th Cir.1974), we upheld the arrest of a passenger in a car when marijuana was discovered in the trunk during a border search. The police reasonably believed the passenger was involved in transporting marijuana and were not required to believe his disavowals of knowledge. *Id.* at 901. Because we remand for factual findings regarding the period of deten-tion, we need not here decide the applicability of *Vaughn*, involving a car stop with a warrant for the arrest of the driver and the other passenger, or *Heiden*, involving a car search at the border, to a consensual investigation inside an apartment where no warrant has been obtained and no exigent circumstances have been claimed or demonstrated.

**3.** Salas conceded that the officers had reasonable suspicion to detain him, so the question of the lawfulness of his detention was not raised on appeal nor considered by this court. *Salas*, 879 F.2d at 534.

The record shows conflict on key points which are significant for determining the course of events justifying detention, pat-downs, and arrest. The court made no findings regarding Prieto's behavior when the police arrived; there is conflicting testimony between Agent Georges and Officer McGraw which must be resolved. There are also some internal inconsistencies within the testimony of Agent Georges, who testified that Tovar let them in and Prieto demonstrated an extreme reaction, and later testified that both Tovar and Prieto reacted very strongly immediately upon the appearance of police. We do not know how Prieto identified himself upon police inquiry, or whether he gave the police any information regarding his relationship to the apartment—a question made particularly pointed by the possibility that he spoke Spanish and the officers spoke English. *Cf. United States v. Castrillon,* 716 F.2d 1279, 1282–1284 (9th Cir.1983) (further factual findings required where determination of whether search was voluntary involved language comprehension). At oral argument, the parties differed as to the number of pat-downs which took place, and the timing of these pat-downs. The district court made no findings as to when pat-downs were conducted, how many pat-downs were conducted, and what, if anything, the pat-downs revealed. The court also made no factual findings regarding the amount of cocaine found on Prieto or the size of the vial, and no specific findings regarding the documents and gun found at the apartment.

We are unable to determine whether the district court based its conclusion as to probable cause and denial of the motion to suppress on the theory that reasonable suspicion had ripened into probable cause, or on the basis that probable cause had been shown by evidence which had already been found in the house, or on a theory of inevitable discovery, or on any other basis. The factual findings are simply insufficient for us to review the district court's determinations and insufficient for us to evaluate Prieto's arguments.

## II.

Federal Rule of Criminal Procedure 12(e), which governs motions to suppress, requires: "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record." Rule 12(g) elaborates: "A verbatim record shall be made of all proceedings at the hearing, including such findings of fact and conclusions of law as are made orally."

Prior to 1975, Rule 12 contained no such requirements. Therefore, cases before that date held that factual findings were not mandatory, though we sometimes noted their importance or remanded for factual findings. For example, in *United States v. Heimforth,* 493 F.2d 970 (9th Cir.), *cert. denied,* 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974), we held that while factual findings were not required on every suppression motion, trial courts ought to make them when the issue was a "delicate" one such as voluntariness of consent to a search. *Id.* at 972. The only means of ensuring that trial courts performed the weighing required by a "totality of circumstances" test was to require explicit factual findings on the issue. *Id. See also United States v. Miner,* 484 F.2d 1075, 1077 (9th Cir.1973) (factual findings not universally required, but case remanded for further factual findings).

In 1974, Congress approved amendments to the Rules of Criminal Procedure which had been proposed by the Supreme Court to take effect in 1975. Rule 12 was rewritten to include the new requirement of factual findings. *See generally* H.R.Rep. No. 247, 94th Cong., 1st Sess., *reprinted in* 1975 U.S.Code Cong. & Admin.News 366, 372. The advisory committee notes on Rule 12(g) show that the addition of this requirement reflected a focus on the needs of appellate review:

This is desirable if pretrial rulings are to be subject to post-conviction review on the record. The judge may find and rule orally from the bench, so long as a verbatim record is taken. There is no necessity of a separate written memorandum

containing the judge's findings and conclusions.

Fed.R.Crim.P. 12 (advisory committee's notes).

In accordance with Rule 12, we have in the past remanded for necessary factual findings to be made. In *United States v. Castrillon*, 716 F.2d at 1282, we stated that a sufficient record of factual findings on the motion to suppress is "necessary to our review." *See also United States v. Robertson*, 606 F.2d 853, 859–60 (9th Cir. 1979). "Compliance with the rule 12(e) requirement is particularly important in a case such as this, where we examine 'all the surrounding circumstances.'" *Castrillon*, 716 F.2d at 1282. Reasonable suspicion and probable cause, like the question of voluntariness under consideration in *Castrillon*, are heavily dependent on the circumstances of the particular case. *Cf. U.S. v. McConney*, 728 F.2d 1195, 1200 n. 4 (9th Cir.) (en banc) (probable cause and exigent circumstances implicate similar questions on review), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *See also United States v. Anderson*, 663 F.2d 934, 941–42 (9th Cir.1981) (remanding for factual findings regarding detention without discussing Rule 12).

However, we have not consistently required district courts to follow Rule 12. Although we remanded under Rule 12 in some cases, in others we stated that, in the absence of any factual findings by the district court, we would view the evidence in the light most favorable to the government, *United States v. Harrington*, 636 F.2d 1182, 1185 (9th Cir.1980), and uphold the denial of the motion if there is a reasonable view of the evidence that will sustain it, *United States v. Williams*, 630 F.2d 1322, 1327 (9th Cir.), *cert. denied*, 449 U.S. 865, 101 S.Ct. 197, 66 L.Ed.2d 83 (1980). *See United States v. Cervantes–Gaitan*, 792 F.2d 770, 772 (9th Cir.1986); *United States v. Most*, 789 F.2d 1411, 1417 (9th Cir.1986); *United States v. Lee*, 699 F.2d 466, 468 (9th Cir.1982).[4] *See also United States v. Coletta*, 682 F.2d 820 (9th Cir.

1982) (upholding "implicit credibility determination" by district court, citing *Harrington*), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983). In fact, *Cervantes–Gaitan* read *Williams* as creating a mandatory requirement that we affirm in the absence of factual findings if any "reasonable view of the evidence" would sustain the denial of the motion. 792 F.2d at 772 n. 1.

We decline to search through the record for support for the government's position as contemplated by these cases. Here, in order to "affirm on any basis disclosed by the record," we would need to resolve disputed factual questions within the testimony of each police officer and differences between the testimony of the different police officers, as well as make inferences which would help fill in the gaps. A review of the authorities and the questions posed by this case persuades us that such an undertaking would be inappropriate, that factual findings by the district court are mandatory, and that remand is therefore required.

No case in this circuit explicitly holds that Rule 12 need not be followed; the requirement is overlooked rather than overruled. For example, in *Cervantes–Gaitan*, both the majority and dissent overlooked Rule 12. The majority reviewed the evidence itself and held that the district court could reasonably have made various conclusions which would have supported denial of the motion to suppress. 792 F.2d at 772–73. The dissent cited cases dating from before the revision of Rule 12 and a treatise section dealing with Rule 41, and argued that, although factual findings were not required, they were necessary in that case for adequate appellate review. *Id.* at 773 (Norris, J., dissenting). In *United States v. Gomez*, 846 F.2d 557, 560 (9th Cir.1988), we recognized the requirements of essential factual findings imposed by Rule 12 and simultaneously stated that in the absence of factual findings we would

---

4. In *Lee,* the district court had based its rulings on "reasons stated ... in defendants' memorandum." 699 F.2d at 468. Factual findings of some sort thus were made.

affirm on any basis in the record.[5]

The importance of Rule 12 is recognized in the treatises: "Perhaps the most significant changes made in the 1975 amendments [to the Federal Rules of Criminal Procedure] were in [another provision of Rule 12] ... and Rule 12(g), requiring a verbatim record of the hearing on a pretrial motion." 1 C. Wright, Federal Practice and Procedure, § 191 at 683 (2d ed. 1982). "If factual issues are involved in determining a motion, the court is required to state its essential findings on the record. A verbatim record must be made of all proceedings at the hearing, including such findings of fact and conclusions of law as are made orally." *Id.*, § 194 at 716. "If the lower court fails to make sufficient findings of fact, the appellate court will remand, sometimes providing specific questions it wants the lower court to answer." 8 J. Moore, Moore's Federal Practice ¶ 12.04[1] at 12–40 (rev.1990) (citing *Castrillon,* 716 F.2d at 1279).

When the Criminal Procedure rules were passed by Congress, the House Judiciary Committee viewed this requirement as one of the "more significant" amendments to Rule 12 and treated it as mandatory: "Subdivision (g) as proposed to be amended requires that a verbatim record be made of the pretrial motion proceedings and that the judge make a record of his findings of fact and conclusions of law." H.R.Rep. No. 247, 94th Cong., 1st Sess. 8, *reprinted in* 1975 U.S.Code Cong. & Admin.News 674, 680.

At the time Rule 12 was enacted, factual findings were envisioned by the Supreme Court, which drafted the amendments, and Congress, which enacted them, as a manda-tory requirement on the district court. The only question is whether our cases affirming in the absence of factual findings preclude us from treating factual findings as mandatory. We find support for our approach in the Supreme Court's emphasis on the fact-finding role of the district court and rejection of inappropriate appellate inferences in *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).

"[I]t is the function of the District Court rather than the Court of Appeals to determine the facts...." *Murray,* 108 S.Ct. at 2543. In *Murray,* a case dealing with the independent source doctrine, the court of appeals had concluded that there was no relationship between an earlier unlawful search and the seizure of the same evidence pursuant to a warrant. The court based its conclusion only on the district court's finding that no recitation of matters from the first search had been made to the magistrate in obtaining the warrant for the second search. The Supreme Court vacated the judgment with orders to remand to the district court, stating that in order to apply the independent source doctrine it must make factual findings that the police would have obtained the search warrant regardless of the discovery of the evidence through the first unlawful search. 487 U.S. at 543–44, 108 S.Ct. at 2536. Although there were some grounds for viewing the initial warrantless entry as aimed at preventing the destruction of evidence, this inference was not sufficiently clear to justify the conclusion that the district court's findings amounted to a determina-

---

**5.** A review of the treatises reveals the possibility that the overlap between Rule 41 and Rule 12 created some of this confusion. Rule 12 deals with pretrial motions; Rule 41 deals with searches and seizure of evidence. In 1972, Rule 41 was amended to indicate that motions for the return of evidence should be handled as motions to suppress under Rule 12. As we have seen, Rule 12 was amended in 1975 to require that factual findings be made on the record by the district court.

However, in some treatises the requirements of factual findings appear not to have been incorporated into the sections discussing Rule

41. *See, e.g.,* 3 C. Wright, Federal Practice and Procedure, § 675 at 787 (findings the "better practice" though not required on motion to suppress); *id.,* Supp.1990 at 153 (citing *Cervantes–Gaitan* dissent). *See also* 8B J. Moore, Moore's Federal Practice ¶ 41.26 at 41–390–91 (rev. 1990) ("the judge must often resolve sharply disputed questions of fact—for example, conflicting versions of defendant and of arresting officers as to whether defendant consented to the search. But the trial judge is not required to make formal findings of fact"). Yet each of these treatises recognizes that factual findings are mandatory in its section discussing Rule 12.

tion of an independent source. *Id.* at 543, 108 S.Ct. at 2536.

We are disinclined to read *Murray* as applying only to appellate fact-finding and inferences in cases dealing with independent sources. As we have noted, many fourth amendment issues involve mixed questions of law and fact. *United States v. Kerr,* 817 F.2d 1384, 1386 (9th Cir.1987). In *McConney,* 728 F.2d at 1201, we noted the superior position of the trial court in making factual determinations, including its unique ability to evaluate the credibility of witnesses. "[T]he pivotal question is[:] do the concerns of judicial administration favor the district court or do they favor the appellate court.... If application of the rule of law to the facts requires an inquiry that is 'essentially factual' ... the concerns of judicial administration will favor the district court." *Id.* (citations omitted) (quoting *Pullman–Standard v. Swint,* 456 U.S. 273, 278, 102 S.Ct. 1781, 1785, 72 L.Ed.2d 66 (1982)). When "the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court." *Id.*

The reasoning which underlies our determination of the standard of review for mixed questions of fact and law in *McConney* supports a literal reading of the requirements of Rule 12. In this case, factfinding includes resolving the discrepancies between the testimony of the two police officers. The district court performed such an exercise in determining facts regarding the entry into the apartment. However, the court made no factual findings regarding the subsequent events surrounding Prieto's arrest, and gave no indication that either officer lacked credibility. The resolution of arguments raised by both parties depends on the facts regarding events while the men were detained and the house was searched. It is the province of the district court to make these determinations.

We find additional support for treating Rule 12 as mandatory in our recent en banc decision to require strict compliance by the district court with Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure. *United States v. Fernandez–Angulo,* 897 F.2d 1514, 1516 (9th Cir.1990) (en banc). Rule 32(c)(3)(D) requires that, if the defendant alleges any factual inaccuracy in the presentence investigation report, the court shall make a finding as to the allegation or a determination that no such finding is necessary because the matter will not be taken into account in sentencing. The rule explicitly requires a written record of such findings and determinations to be appended to any copy of the presentence investigation report made available to the Bureau of Prisons. Fed.R.Crim.P. 32(c)(3)(D).

"Strict compliance with the Rule is required.... We believe that the bright-line rule we adopt imposes no onerous burden on the district courts and is most faithful to the language of the Rule." *Fernandez–Angulo,* 897 F.2d at 1516. Since the district court had not complied with the substantive requirements of Rule 32, we vacated the sentence and remanded for resentencing in compliance with the Rule. *Id.* at 1517.

The Federal Rules of Criminal Procedure have the force and effect of law. *Ochoa v. United States,* 167 F.2d 341, 345 (9th Cir.1948); 1 C. Wright, *supra,* § 32 at 26. Our holding in *Fernandez–Angulo* rests on the language of the rule itself rather than the importance of the factual findings involved.[6] 897 F.2d at 1516–17. Therefore, it may not be necessary to examine the importance of the factual findings undertaken in each rule; however, we note that factual findings at a suppression hearing are certainly no less important than those made in a presentence report under Rule 32(c)(3)(D).

"[S]uppression hearings are often as important as the trial itself." *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210,

---

**6.** The advisory committee's notes to Rule 32 emphasize that assertions of fact in the presentence report affect "critical determinations relating to custody or parole." Fed.R.Crim.P. 32(c)(3)(D), advisory committee's notes, *reprinted in* 5 L. Orfield, Orfield's Criminal Procedure under the Federal Rules § 32:4 at 151 (2d ed. 1987).

2215, 81 L.Ed.2d 31 (1984) (citing concurring opinions in *Gannett Co. v. DePasquale,* 443 U.S. 368, 397, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608 (1979). "The government's case may turn upon the confession or other evidence that the defendant seeks to suppress, and the trial court's ruling on such evidence may determine the outcome of the case." *Gannett,* 443 U.S. at 397 n. 1, 99 S.Ct. at 2914 n. 1 (Powell, J., concurring). "[I]n many cases, the suppression hearing [is] the *only* trial, because the defendants thereafter plead[ ] guilty pursuant to a plea bargain." *Waller,* 467 U.S. at 47, 104 S.Ct. at 2216 (emphasis in original). The unique importance of suppression motions to the determination of guilt and their critical timing in shaping the choice between a trial and a plea make appellate review—the goal of Rule 12—at least as important as the decisions of the Bureau of Prisons which are the focus of the comments on Rule 32(c)(3)(D).

The requirement that essential factual findings be placed on the record to facilitate appellate review originated at the Supreme Court and is underscored by the Court's statement in *Murray* that fact-finding is the province of the district court. The Federal Rules of Criminal Procedure are subject to continual revision; should Rule 12(e) and 12(g) prove onerous or unnecessary, the Rules may be amended to ease the requirement they impose. Unless such a revision is made, district courts must put their essential factual findings on the record.

The only remaining question is what constitutes an "essential" factual finding. Essential factual findings are those which will permit appellate review of the legal questions involved. Because many fourth amendment questions mix determinations of law and fact, the district court should be sure to make explicit those facts upon which its conclusions rest.

We reverse the denial of the motion to suppress and remand with instructions for the district court to make these findings on the record, in addition to any other findings essential to the determination that probable cause existed for the arrest of Prieto. In making such findings, the district court may, if appropriate, reconsider its ruling. *See Castrillon,* 716 F.2d at 1284.

### III.

▮ Prieto also challenges the calculation of his sentence under the Sentencing Guidelines pursuant to his conditional guilty plea, arguing that he was a minor participant in the conspiracy and that therefore the district court erred in refusing to decrease his sentence by two points under § 3B1.2 of the Sentencing Guidelines. Downward adjustments under the Sentencing Guidelines are to be used infrequently. *United States v. Gillock,* 886 F.2d 220, 222 (9th Cir.1989) (per curiam). A district court's finding that a defendant does not qualify for minor participant status is " 'heavily dependent on the facts of the particular case.' " *Id.* (quoting Commentary to Guideline 3B1.2). *See also United States v. Christman,* 894 F.2d 339, 341 (9th Cir.1990). Whether the defendant was a minor participant is a factual finding subject to review under the clearly erroneous standard. *United States v. Sanchez–Lopez,* 879 F.2d 541, 557 (9th Cir.1989).

Prieto admitted to adapting cars for smuggling. At sentencing, the district court based its conclusion on his role, his acquaintance with the parties, his access to the gun, and his participation in guarding the money. The sentencing report shows that the finding that Prieto had guarded the money was supported by statements his attorney made to the Probation Department. The determination that Prieto was not a minor participant is not clearly erroneous. We therefore find no error in the calculation of his sentence under the Guidelines. Should the denial of his motion to suppress ultimately be upheld, he was sentenced appropriately pursuant to his plea.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

BOOCHEVER, Circuit Judge, concurring:

I do not read the majority opinion as ruling out the admissibility of the cocaine

found on Prieto under the inevitable discovery doctrine. If the officers had reasonable suspicion permitting a *Terry* stop and did not perform a pat-down search prior to Prieto's arrest, and if the vial of cocaine would have been discovered inevitably during a pat-down search for weapons, the evidence need not be suppressed. *See United States v. Andrade,* 784 F.2d 1431, 1433 & n. 3 (9th Cir.1986) (where government shows by a preponderance of the evidence that cocaine discovered pursuant to an illegal search would have been discovered inevitably during a routine DEA inventory search, cocaine was properly admitted).