999 F.2d 544
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Christopher BILLINGS, Defendant-Appellant.
 No. 92-10498.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 12, 1993.
Decided July 23, 1993.
 
 1
 Before BROWNING and CANBY, Circuit Judges, and KELLEHER* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Christopher Billings pleaded guilty to one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 846. He appeals the sentence imposed under the Sentencing Guidelines. We affirm.
 
 BACKGROUND
 
 4
 Billings primarily advanced the conspiracy by obtaining precursor chemicals that are used to make methamphetamine. He dispatched a courier to buy a precursor, and paid the courier with both money and drugs. The courier was an undercover informant.
 
 
 5
 Authorities confronted Billings and a codefendant, Michael Schaffner, as the two men alighted from a boat on a rural lake. Billings and Schaffner came ashore near Schaffner's van. Officers had earlier seen the van tow a boat containing precursors to the lake. Schaffner consented to a search of the van and told authorities that a gun lay under a rear seat. There officers found an unloaded revolver with a gun belt containing matching bullets.
 
 
 6
 Officers detained Billings and Schaffner while other officers crossed an inlet to the campsite from which the men had come. There authorities found a third conspirator, Robert Wisdom, and a methamphetamine lab in a tent. In another tent pitched nearby officers seized a revolver which belonged to Wisdom. After Billings' arrest, officers seized a plastic bag containing methamphetamine and four five-gallon cans of a precursor from his home.
 
 
 7
 The government charged Billings and his codefendants with conspiring and attempting to make methamphetamine. The government charged Billings alone with possessing methamphetamine with intent to distribute. Billings agreed to plead guilty to conspiracy in exchange for the dismissal of the remaining charges against him.
 
 
 8
 The district court had jurisdiction under 18 U.S.C. § 3231. It set Billings' initial offense level at 36 under U.S.S.G. section 2D1.1(c)(4). The court granted a two-step reduction for acceptance of responsibility, id. § 3E1.1(a), and imposed a two-step increase for possession of a firearm in connection with the conspiracy. Id. § 2D1.1(b)(1). With no criminal history, the presentence report recommended a sentence of 188 months. However, the court granted a government motion under U.S.S.G. section 5K1.1 to halve that term in light of Billings' substantial assistance to authorities.
 
 
 9
 Billings addressed the court prior to receiving sentence. He said that his wife had deserted him and taken everything. Fearful of losing his home, he explained that he had joined the conspiracy with hope of earning quick cash. He expressed deep remorse for his crime and noted that he had committed no prior offenses.
 
 
 10
 The district court sentenced Billings to 94 months imprisonment. Billings timely appealed his sentence. This court has jurisdiction under 18 U.S.C. § 3742(a)(1)-(2).
 
 DISCUSSION
 
 11
 Billings challenges his sentence on three grounds. First, he argues that enhancement under U.S.S.G. section 2D1.1(b)(1) was improper. Second, he argues that he is entitled to a two-step reduction as a minor participant under section 3B1.2(b) of the Guidelines. Third, he contends that a downward departure was available and justified on the basis of diminished mental capacity and aberrant behavior.
 
 The Weapon Enhancement
 
 12
 We review for clear error the district court's finding that Billings possessed a firearm during the commission of a narcotics offense. United States v. Kelso, 942 F.2d 680, 681 (9th Cir.1991). The district court adopted the recommendation of the presentence report for an enhancement based on both the gun found in the van and the gun found in the tent.
 
 
 13
 Billings argues that he lacked constructive possession of either gun. That argument, however, is irrelevant because Billings concedes that his coconspirators possessed the guns. The only questions are whether either gun bore an objectively sufficient connection to the conspiracy, see U.S.S.G. § 2D1.1, comment. (n. 3); United States v. Stewart, 926 F.2d 899, 900-01 (9th Cir.1991), and whether Billings reasonably foresaw that one of his coconspirators possessed either gun. See United States v. Garcia, 909 F.2d 1346, 1349 (9th Cir.1990); Kelso, 942 F.2d at 682 n. 3.
 
 
 14
 The gun in the tent satisfies both criteria. We cannot say that it was "clearly improbable" that Wisdom's gun was connected with the conspiracy. § 2D1.1, comment. (n. 3). That gun lay in a tent which had been pitched near the drug lab in a remote area.
 
 
 15
 Furthermore, there is no clear error in finding that Billings reasonably could have foreseen that Wisdom had a gun at the lab. Contrary to his assertion, such a finding requires no abstract presumption that guns follow drug traffickers. The lab was in a relatively unprotected enclosure, and a need for protective weapons was reasonably foreseeable. The district court was not compelled to accept Billings' view that guns are needed less to protect drug manufacture than to protect drug distribution. Moreover, there is no evidence to show that a drug lab set up in a rural area is any less likely to be disturbed than one set up in an urban setting. Billings' weapon enhancement was proper.[1]
 
 Role in the Offense
 
 16
 Billings bears the burden of proving by a preponderance of the evidence that he was a minor participant in the conspiracy. United States v. Howard, 894 F.2d 1085, 1090 (9th Cir.1990). We review for clear error the district court's finding that Billings was a major participant. United States v. Peters, 962 F.2d 1410, 1414-15 (9th Cir.1992). The lenient standard of review reflects that the finding itself is "heavily dependent upon the facts of the particular case." United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir.1990) (citation and quotation omitted).
 
 
 17
 Billings presents a colorable argument that he was a minor participant in the conspiracy. He joined it late, and had little or no authority to set the goals of the conspiracy or to supervise its operations. The government concedes that "Billings largely played the role of gopher in the conspiracy," [E.R. 46], with his role confined principally to obtaining precursors.
 
 
 18
 We cannot say, however, that it was clear error to reject that argument. Sufficient evidence exists that Billings was more than a mule. The conspirators stored precursors at his home and held meetings there which Billings attended. Agents also found a small quantity of the manufactured drug in the home. Those facts bear sufficient resemblance to those in United States v. Gillock, 886 F.2d 220, 221-22 (9th Cir.1989) (defendant's home contained weapons, money, precursors, methamphetamine, and lab equipment), to support the district court's finding.
 
 
 19
 Billings further contends that he knows little or nothing about the manufacturing process. That argument is meritless. Even if his role were limited to obtaining precursors, that task was essential to the manufacture, and not the mere distribution, of methamphetamine. Cf. United States v. Belden, 957 F.2d 671, 676 (9th Cir.) (finding defendant's installation and maintenance of generator important to marijuana manufacture), cert. denied, 113 S.Ct. 234 (1992).
 
 
 20
 Billings counters that the profits of this conspiracy were to be divided between Wisdom and Schaffner only. He relies upon a statement that Schaffner gave his probation officer naming Wisdom as the leader of the conspiracy. Wisdom, however, asserted at the joint sentencing hearing that he was the minor participant. [See E.R. 65.] The judge made a credibility determination that Billings, Wisdom, and Schaffner were equal partners in the conspiracy. Billings fails to show that the finding was clearly erroneous.
 
 Downward Departure
 
 21
 Mindful that this court lacks jurisdiction to review a discretionary refusal to depart downward, United States v. Morales, 898 F.2d 99, 101-03 (9th Cir.1990), Billings argues that the district court was unaware it had discretion to depart. Such an argument is reviewable. Belden, 957 F.2d at 676.
 
 
 22
 Billings' version of that argument, however, was never fairly presented to the district court. He contends that his statement to the court was an implicit motion for downward departure on the grounds of diminished capacity, see U.S.S.G. § 5K2.13, p.s., and aberrant behavior, see, e.g., United States v. Dickey, 924 F.2d 836, 838-39 (9th Cir.) (recognizing a first offense as a ground for departure where it constitutes a single act of aberrant behavior), cert. denied, 112 S.Ct. 383 (1991). That characterization makes little sense here. Obviously the district court was "unaware" of its presumed authority to depart when no one brought the question to the court's attention. We deem the argument waived.
 
 CONCLUSION
 
 23
 Billings reasonably could have foreseen that weapons would be used in the course of this conspiracy. Thus, the weapon enhancement under section 2D1.1(b)(1) was proper. Furthermore, there was no warrant for a reduction under section 3B1.2(b) on the basis of his role in the conspiracy. Finally, the district court's refusal to depart downward is unreviewable.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Because the presence of a gun near the lab was reasonably foreseeable, we need not decide whether the same was true of Schaffner's revolver. Billings further alleges that the government violated its plea agreement by seeking the weapon enhancement. That claim is waived because Billings failed to raise it below. See United States v. Flores-Payon, 942 F.2d 556, 560 (9th Cir.1991)