NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2715
_____

UNITED STATES OF AMERICA

v.

SHAWN LOWE,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 11-cr-00111)
District Judge:  Honorable J. Curtis Joyner
_____

Argued April 16, 2013
Before:  AMBRO, HARDIMAN and COWEN, *Circuit Judges*.

(Filed: May 7, 2013)

Robert A. Zauzmer [Argued]
Arlene D. Fisk
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
        *Attorneys for Plaintiff-Appellee*

Robert Epstein [Argued]
Dina Chavar
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
        *Attorneys for Defendant-Appellant*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Shawn Lowe appeals the District Court's order denying his motion to suppress. Because we lack a sufficient record to decide the legal issues presented in this appeal, we will vacate and remand the matter to enable the District Court to make specific written findings of fact and conclusions of law.

I

Lowe was indicted in the Eastern District of Pennsylvania on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The charge stemmed from an encounter in the early morning hours of September 9, 2010, during which the Philadelphia police recovered a gun from Lowe's person after receiving an anonymous tip that someone matching his description and location was in possession of a firearm. Shortly after the indictment issued, Lowe filed a motion to suppress, arguing that the police did not have reasonable suspicion to justify their *Terry* stop of Lowe.

The District Court held a hearing on the motion to suppress at which three police officers and Lowe's girlfriend, Tamika Witherspoon, testified regarding the September 9 encounter. Significant to our decision here, each witness gave accounts of the events that varied in significant respects. For example, the witnesses differed as to, *inter alia*:

2

(1) when Lowe complied with the officers' commands to freeze; (2) when Lowe complied with the officers' commands to raise his hands; (3) whether and when the officers brandished firearms; and (4) whether and when Lowe voluntarily placed his hands on the wall. Following this testimony, the District Court heard argument from both sides and, at the conclusion of the hearing, denied the motion to suppress. With regard to the seizure, the Court stated:

> They ask your client to remove his hands, and based on the testimony that is presented here he failed to present his hands.
>
> I say based on that the police had reasonable suspicion to believe that he was carrying a gun, and for their own safety and precaution they had the right to search him. . . .
>
> This Court will further supplement the record in reference to findings of fact and conclusions of law as it relates to this motion to suppress.

App. 216–17. Despite its statement to the contrary, the District Court did not issue written findings of fact or conclusions of law.

On November 28, 2011, Lowe pleaded guilty pursuant to a plea agreement with the Government, in which Lowe reserved the right to appeal the denial of his motion to suppress. This appeal followed.

On appeal, Lowe argues that the gun should have been suppressed because the police seized him before they had reasonable suspicion to effectuate the *Terry* stop that led to recovery of the gun. As is typical in these sorts of cases, determining the moment of seizure is a fact-bound inquiry that depends not only upon what happened during the encounter between Lowe and the police, but also upon the sequence of those events. Because the events of September 9 are in dispute, we cannot adequately review the matter without specific findings of fact.

We acknowledge, of course, that the Federal Rules of Criminal Procedure do not require a district court to make written findings of fact; rather, they require the court to "state its essential findings on the record." Fed. R. Crim. P. 12(d). Typically, when the district court makes no written findings of fact, we will "extract findings from his oral decision at the hearing," *In re Application of Adan*, 437 F.3d 381, 396 (3d Cir. 2006), and "we view the evidence in the light most likely to support the district court's decision," *United States v. Gomez*, 846 F.2d 557, 560 (9th Cir. 1988) (citing *United States v. Alfonso*, 759 F.2d 728, 740 (9th Cir. 1985)). In cases such as this one, however, where we are presented with conflicting versions of complex historic facts in the context of difficult legal questions, remand is the most appropriate decision. *See, e.g.*, *In re Adan*,

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and we exercise plenary review of

4

437 F.3d at 398 & n.8 (remand to the district court to make written factual findings because "the complicated factual history calls for a formal, written analysis of the full field of evidence to . . . discharge properly our review function"); *United States v. Prieto-Villa*, 910 F.2d 601, 605 (9th Cir. 1990) (remand to the district court to make written factual findings in a suppression case because the court of appeals "cannot evaluate Prieto's argument as to the existence of grounds for detention without factual findings as to what happened when the police arrived").

This case is akin to the cases just cited. Four different witnesses testified, and each gave an account of the events that differed from those of the others in important respects. Furthermore, this is not a case where we are able to infer exactly which witnesses the District Court credited. Instead, we would be forced to pick and choose portions of each witness' testimony without knowing whether those decisions are consistent with the District Court's view of the testimony.

In circumstances such as these, the most prudent course is to remand for the District Court to make written findings of fact and conclusions of law so that we may be able to conduct an appropriate appellate review.

---

the District Court's application of law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

III

For the foregoing reasons, we will vacate the order denying Lowe's motion to suppress and remand the case to the District Court for further proceedings consistent with this opinion.

United States of American v. Shawn Lowe
No. 12-2715

_____

AMBRO, Circuit Judge, concurring.

I join Judge Hardiman's opinion, as a remand will be beneficial in developing a clearer factual record. I write separately, however, because I am skeptical that any interpretation of the current record could support a finding that Lowe was not seized at the outset of his encounter with the police and before there was any reasonable suspicion.

Here, the police presented a clear show of authority when they approached Lowe. The only issue is whether (and when) Lowe submitted to that authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (explaining that a seizure is effected when a suspect evinces submission to a "show of authority"). Remaining in place in response to an officer's show of authority can alone be sufficient for submission. *See Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (concluding seizure occurred when individual remained in his vehicle yet refused to comply with an officer's orders to roll down the window); *see also Brendlin v. California*, 551 U.S. 249, 262 (2007) ("But what may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away."); *United States v. Johnson*, 620 F.3d 685, 691 (6th Cir. 2010) ("It would be an unnatural reading of the case law to hold that a defendant who is ordered to stop is not seized until he stops *and* complies with a subsequent order to raise his hands." (emphasis in original)).

Although there is disagreement whether Lowe was ordered to freeze or simply to show his hands, I believe that either directive required—either explicitly or implicitly—that Lowe remain in place. Thus, if he halted and did not attempt to flee as a result of either instruction, this would be enough to show that he was seized at that moment. In reviewing the record, this seems to be what occurred. Indeed, I see no serious suggestion that this was not the case. Even if Lowe, according to one officer, may have stepped backward initially on the order to stop walking, this did not undermine his submitting to that order. And, to any extent Lowe merely "looked like he was getting ready to run" per officer testimony, App. at 78, that is immaterial, *see Johnson*, 620 F.3d at 692 (rejecting argument "that a person who has actually stopped in response to officers' commands but who looks like he *might* run has not submitted to an order to stop" (emphasis in original)).

Our decision in *United States v. Brown*, 448 F.3d 239 (3d Cir. 2006), seems particularly analogous to the matter before us. There, we concluded a clear submission occurred where Brown yielded to the officer's authority by merely "turning to face the police car and placing (or moving to place) his hands on the vehicle." *Id.* at 246. Moreover, Brown's "subsequent attempt to flee" did not erase that submission because he had indicated initially something more than "momentary compliance." *Id.* (internal quotation marks omitted).

Clearer factual findings will ultimately be helpful in the resolution of this matter. However, my view of the record in its unresolved state strongly suggests that Lowe effectively halted at the officers' behest, and thus was seized at the outset of the

encounter.  Because there was no reasonable suspicion at that moment, *see Florida v. J.L.*, 529 U.S. 266, 268 (2000), this conclusion would require suppression of any evidence following Lowe's seizure, and would render pointless any inquiry into hand movements as evasive or suspicious behavior.