981 F.2d 1260
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Matthew IPKA, Defendant-Appellant.
 No. 91-50354.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided Dec. 28, 1992.
 
 Before WALLACE, Chief Judge, and TROTT and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Matthew Ipka appeals his conviction upon a conditional guilty plea to importation of heroin in violation of 21 U.S.C. §§ 952(a), 960(a)(1) (1988), and possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Ipka was detained at the airport, questioned, searched, and subjected to an abdominal x-ray which revealed balloons of heroin in his stomach. Upon the denial of his Motion to Suppress Evidence, Ipka entered a conditional guilty plea.
 
 DISCUSSION
 
 3
 I. Reasonable Suspicion to Justify Intensive Examination
 
 
 4
 Ipka argues the trial court erred in denying his Motion to Suppress Evidence because the evidence seized was the fruit of an illegal detention. Specifically, Ipka alleges the customs inspectors lacked reasonable suspicion to justify detaining him beyond a routine customs inspection.
 
 
 5
 A trial court's decision to deny a motion to suppress is reviewed de novo. United States v. Prieto-Villa, 910 F.2d 601, 604 (9th Cir.1990). The lawfulness of a search is reviewed de novo. United States v. Johnson, 936 F.2d 1082, 1083 (9th Cir.1991).
 
 
 6
 "A person entering the United States from an international flight is subject to routine searches without probable cause. His luggage, purse and pockets may be searched without a showing of suspicion. A 'minimal showing of suspicion' is required for a pat-down search." United States v. Quintero-Castro, 705 F.2d 1099, 1100 (9th Cir.1983) (citations omitted); United States v. Montoya de Hernandez, 473 U.S. 531, 542 (1985) (Court applied reasonable suspicion standard to detentions beyond the scope of a routine customs search and inspection).
 
 
 7
 The customs inspectors conducted a permissible routine search of Ipka until they brought him to the search room and subjected him to a pat-down search. Based on the following information known to Special Customs Inspector (SCI) Glen Roberts at the time he authorized the intensive examination, we find there was reasonable suspicion that Ipka was smuggling contraband: (1) Ipka's behavior was inconsistent with his story that he was a person returning from a "pleasure trip" because he was wearing a suit, carrying a briefcase, carrying only carry-on luggage, bringing no gifts for his family and travelling alone; (2) Ipka appeared highly agitated during the interviews: he was "very nervous" when he was interviewed by Customs Inspector (CI) Carlos Herrera; sweating profusely, breathing heavily and nervously, mopping his face, and looking up at the ceiling and all around when he was interviewed by CI Samuel Ko; and appeared "very nervous" when he was interviewed by SCI Roberts; (3) heavy breathing and sweating are consistent with the physical discomfort associated with body cavity smuggling; (4) Ipka made inconsistent statements about meeting a friend in Bulgaria; (5) Ipka's passport had no entry stamp for West Germany, although he stated he had travelled there; (6) Ipka's briefcase contained a number of loose condoms, an item "typically used in body cavity smuggling," United States v. Aman, 624 F.2d 911, 912 (9th Cir.1980); (7) Ipka carried two Nigerian passports, and gave an implausible story that they belonged to his wife; (8) Ipka had travelled from Nigeria, a heroin source country, United States v. Oba, No. 91-10137, slip op. at 13023 (9th Cir. Nov. 2, 1992); (9) Ipka attempted to conceal his travel to Nigeria by flying to Europe and buying a ticket to the United States from there; (10) Ipka lied to customs officials about his travel to Nigeria; (11) Ipka gave an implausible explanation for why he lied to customs officials.
 
 
 8
 Based on these facts, a trained customs inspector such as SCI Roberts "certainly had more than an 'inchoate and unparticularized suspicion or hunch' " that Ipka was smuggling contraband. See Montoya de Hernandez, 473 U.S. at 542 (quoting Terry v. Ohio, 392 U.S. 1 (1968)). Therefore, the district court did not err in denying Ipka's motion to suppress evidence obtained during the intensive examination.
 
 
 9
 2. Voluntariness of Consent To The X-Ray Examination
 
 
 10
 Ipka argues that because the x-ray examination was an unlawful search, evidence derived from it should be suppressed. Specifically, he contends the district court erred in finding that he voluntarily consented to the x-ray examination.
 
 
 11
 "A finding by a trial court of voluntary consent should be reversed only if, after viewing the evidence in the light most favorable to the government, an appellate court concludes that the lower court was clearly erroneous." United States v. Faherty, 692 F.2d 1258, 1260 (9th Cir.1982). It is the Government's burden to show that consent was given freely and voluntarily. Schneckloth v. Bustamonte, 412 U.S. 218, 221-22 (1973).
 
 
 12
 " 'The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.' " United States v. Faherty, 692 F.2d at 1261 (quoting Schneckloth, 412 U.S. at 226). In Schneckloth, the Supreme Court considered the following factors in determining the voluntariness of a defendant's consent:
 
 
 13
 [T]he youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.
 
 
 14
 412 U.S. at 226 (citations omitted).
 
 
 15
 The Schneckloth factors mitigate in favor of the district court's finding of voluntary consent: (1) Ipka is an adult who speaks and reads English; (2) he is educated, with a degree in engineering; (3) he read the consent form; (4) he was expressly advised of his right not to sign the consent form by the supervising inspector; (5) he was expressly advised by SCI Roberts that he should only sign the form freely and voluntarily; (6) the detention was of short duration with no physical punishment involved.
 
 
 16
 Ipka counters that his consent was involuntary because: (1) he was in a small room surrounded by four men; (2) one of the officers had a holstered gun; (3) he was not free to leave; (4) the officers spoke to him in ominous tones; (5) he was not informed of the process of obtaining a court order; and, (6) he had a subjective fear of official violence based on stories he'd heard of interrogation practices in Nigeria. These arguments are meritless.
 
 
 17
 As for Ipka's first argument, we note that the district court was aware of the size of the room and number of officers when it made its finding. Moreover, in a case that was factually on point, this court did not even consider such factors in determining the voluntariness of a defendant's consent. See United States v. Caicedo-Guarnizo, 723 F.2d 1420, 1424 (9th Cir.1984).
 
 
 18
 Ipka's second argument is negated by United States v. Alfonso where this court held that the officers' act of holstering guns after effectuating an armed arrest rendered defendant's subsequent consent to search the premises voluntary. 759 F.2d 728, 741 (9th Cir.1985). Ipka's third argument that he was coerced because he was not free to leave is also contradicted by Alfonso, which held that "[t]he fact of custody does not itself negate voluntariness." Id.
 
 
 19
 We decline to adopt Ipka's fourth argument, which has no precedential support, that coercion arises from officers addressing a suspect in "ominous tones." We also decline to adopt Ipka's unsupported fifth argument that consent is involuntary where a suspect is not informed of the process of obtaining a court order. The proposition that SCI Roberts was required to inform Ipka of collateral information is incompatible with Schneckloth's holding that a suspect need not even be informed of his right to refuse consent as a prerequisite to establishing voluntary consent. 412 U.S. at 248-49. The fact that Ipka was told he could refuse to consent was more than the Supreme Court requires for a showing of voluntariness.
 
 
 20
 While Ipka's subjective fear argument is supported by Schneckloth, which held that "account must be taken of ... the possibly vulnerable subjective state of the person who consents," 412 U.S. at 229, we must also consider the reasonableness of that fear, United States v. Castrillon, 716 F.2d 1279, 1283 n. 1 (9th Cir.1983). "The test is not whether a reasonable person would fear a beating for refusal to consent, but whether a person in [the defendant's] position would reasonably have feared a beating. Here we require that the court examine the objective conduct of the customs agents." Id. (emphasis added).
 
 
 21
 Although Ipka might genuinely have been afraid of being beaten by the customs agents because of stories he heard of Nigerian interrogations, the fear was unreasonable in light of the objective conduct of these agents. Therefore, looking at the totality of the circumstances, we conclude the district court was not clearly erroneous in holding that Ipka voluntarily consented to the x-ray search.[1]
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In so holding, we need not reach the question of whether the inspectors had the requisite level of suspicion that Ipka was smuggling contraband within his body to justify the warrantless x-ray search